Patricia Dean **BOSWELL**, Appellant,

v.

**BRAZOS ELECTRIC POWER COOPERATIVE, INC.,**
**Appellee.**

No. 2–94–140–CV.

Court of Appeals of Texas,
Fort Worth.

Oct. 19, 1995.

Rehearing Overruled Dec. 14, 1995.

---

Don M. Chrestman, Vick, Chrestman & Carney, Weatherford, for Appellant.

Jim McDermitt, Riley & McDermitt, Waco, for Appellee.

Before CAYCE, C.J., and LIVINGSTON and CHUCK MILLER (Assigned), JJ.

## OPINION

CHUCK MILLER, Justice (Assigned).

This is a condemnation case in which Brazos Electric Power Cooperative, Inc. (Brazos Electric) sought to condemn an easement or right-of-way for an electric power transmission line across two tracts of vacant, unimproved land owned by Patricia Dean Boswell (Boswell). Boswell now appeals from the granting of a partial summary judgment in favor of Brazos Electric and a final judgment awarding Boswell $60,735 as compensation for the taking of her property. Boswell raises seven points of error that generally concern the presence of genuine issues of material fact that preclude summary judgment and the admission and exclusion of evidence at trial.

We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Brazos Electric is a nonprofit, electric cooperative organized under TEX.REV.CIV.STAT. ANN. art. 1528b (Vernon 1980 & Supp.1995) for the purpose of rural electrification. *Id.* § 3. On May 23, 1990, Brazos Electric filed an application with the Public Utility Commission (PUC) to permit construction of a new electric transmission line to serve portions of southeast Parker County, Texas.[1]

1. The project contemplated the construction of 9.19 miles of 138 kV wood H-frame transmission line on a 100 foot right-of-way and the installation of a substation deadend tower on the site of a proposed substation southeast of the City of Aledo, Texas. The purpose of the "Aledo" project was to provide electrical service to the proposed substation, relieve the loading of the nearby Dicey substation (located outside Willow Springs, Texas), and to prevent excessive voltage

The application advanced three alternate routes for the proposed line, only one of which was both economically and environmentally feasible according to Brazos Electric's impact study.

After the PUC approved the application on March 21, 1991, Brazos Electric initiated condemnation proceedings under its power of eminent domain to acquire all easements or rights-of-way necessary for the completion of the project. *See* Tex.Rev.Civ.Stat.Ann. art. 1528b, § 4(7), (11) (Vernon 1980). On July 10, 1992, Brazos Electric filed its original petition for condemnation to acquire a "right-of-way easement" across property owned by Boswell, George Beggs, III, and John Henry Dean, III.[2] The subject property, known as the Dean Ranch, is comprised of two separate tracts of land—a North and South tract. On August 10, 1992, a three-member panel of Special Commissioners returned an award of $123,400 for the damages occasioned by the condemnation of a "right-of-way easement" across both the North and South tracts for the purpose of constructing the proposed electric transmission line. Both parties objected to the damage assessment.

On May 7, 1993, Brazos Electric filed a motion for partial summary judgment on the grounds that the "only contested issue remaining in this cause is the value of [Boswell's] property taken by [Brazos Electric] in this proceeding, and the damages to the remainder of [Boswell's] property, if any." The trial court granted Brazos Electric's motion for partial summary judgment and set the issue of value for jury trial. The jury subsequently awarded Boswell damages totalling $60,735 for the change in fair market value of the North and South tracts occasioned by the right-of-way.

## PARTIAL SUMMARY JUDGMENT

In her first and second points of error, Boswell contends that the trial court erred in granting Brazos Electric's motion for partial summary judgment. Specifically, Boswell argues that there are genuine issues of material fact concerning whether Brazos Electric

abused its discretion by constructing the electric transmission line (i) in violation of two PUC orders and (ii) in violation of internal company policy.

### A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met their summary judgment burden by establishing that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. *See* Tex.R.Civ.P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue to a material fact are resolved against movant. *Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Id.*

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Ins. Co.*, 480 S.W.2d 176, 178 (Tex.1972). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47.

### B. Summary Judgment Evidence

In his affidavit attached to Brazos Electric's motion for partial summary judgment, Albin Petter stated that on March 20, 1991, the PUC issued a "Final Order" approving Brazos Electric's application to construct a new transmission line that would, in part, traverse the North and South tracts. At the

---

drop and thermal conditions caused by the distance from the Dicey substation and the Aledo service area.

**2.** George Beggs, III, and John Henry Dean, III, are not parties to this appeal.

time of the condemnation, easements for a Texas Utilities Electric Company (TU Electric) transmission line and a Diamond Shamrock pipeline already existed on the subject property. Accordingly, Finding of Fact No. 3 of the PUC's Final Order states, "3. The right-of-way for the proposed [Brazos Electric] line will be parallel with and immediately adjacent to an existing Texas Utilities Electric Company 345 KV transmission line."

This directive was followed with regard to the North tract. However, this dispute centers only on the South tract where the Brazos Electric transmission line diverges from the TU Electric line at the northern-most boundary of the tract and progresses due south toward the proposed Aledo substation site. In effect the line dissects the tract into two relatively equal halves. Hence, Boswell contends that Brazos Electric abused its discretion by not complying with the PUC order that she alleges mandated that the *entire* Brazos Electric transmission line parallel the existing TU Electric line. In response, Brazos Electric argues that it constructed the transmission line in question exactly as contemplated in its application to the PUC, which was purportedly approved as applied for.

The application itself recommended a proposed route that extended:

> [A]pproximately 9.19 miles (14.79 km) in length originating at [Brazos Electric's] existing Dicey substation. From the Dicey substation the proposed transmission line heads southerly for approximately 0.05 miles (0.08 km), turns easterly and proceeds for approximately 0.21 miles (0.34 km), turns southeasterly and proceeds for approximately 7.23 miles (11.63 km) paralleling an existing TU 345 KV transmission line and Diamond Shamrock gas pipeline, turns southerly and proceeds for approximately 1.70 miles (2.74 km) terminating at the proposed new Aledo substation site.

In addition to the application, the parties entered into a "Unanimous Stipulation" in which they agreed that the proposed Brazos Electric transmission line would run parallel with and adjacent to the existing TU Electric line through a subdivision of the City of Willow Park, Texas. However, no further stipulations were made with regard to the Dean Ranch, nor more specifically, with the South tract.

Boswell argues further that construction of the transmission line, as is, violates Brazos Electric's own internal policy of complying with a United States governmental publication entitled "Environmental Criteria for Electrical Transmission Systems" (ECETS). According to the ECETS, "properly sited established rights-of-way should be used where warranted for the location of additions to existing transmission facilities." In its application to the PUC, Brazos Electric stated that it followed the criteria set forth in the ECETS "where applicable." Thus, Boswell argues that the summary judgment evidence raises a genuine issue of material fact about whether Brazos Electric abused its discretion in constructing the transmission line across the South tract in violation of the PUC's order, the parties' stipulation, and Brazos Electric's own internal policy.

### C. Law Applicable to the Case

A condemnor's discretionary power to select the site for an electrical transmission line will not be disturbed in the absence of proof of fraud, bad faith, or gross abuse of discretion. *Krenek v. South Texas Elec. Coop., Inc.*, 502 S.W.2d 605, 607 (Tex.Civ. App.—Corpus Christi 1973, no writ). An abuse of discretion is not shown by merely proving that an alternative plan may be feasible or better adapted to the project, that another plan might be more convenient to the landowner, or that the cost of an alternative plan would be less than the cost of the proposed plan. *Id.*

To determine whether Brazos Electric exceeded the authority granted by the PUC to construct the transmission line, we must construe the Final Order providing approval for the project. Rules of statutory construction apply equally to the construction of an administrative order. *Trapp v. Shell Oil Co.*, 145 Tex. 323, 347, 198 S.W.2d 424, 439 (1946); *Airport Coach Serv., Inc. v. City of Fort Worth*, 518 S.W.2d 566, 574 (Tex.Civ. App.—Tyler 1974, writ ref'd n.r.e.) (op. on reh'g). Therefore, the task for this court is

to ascertain the intent of the administrative body that promulgated the order. *Railroad Comm'n of Texas v. Home Transp. Co.*, 670 S.W.2d 319, 325 (Tex.App.—Austin 1984, no writ); *Airport Coach Serv., Inc.*, 518 S.W.2d at 574.

According to the rules of statutory construction, terms used within a statute, or as in this case an administrative order, should be given their plain and ordinary meaning. *E.g., Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 619 (Tex.1987). Under this rationale, Boswell argues that because the PUC's Final Order merely states that the proposed transmission line is to parallel an existing TU Electric line, Brazos Electric had no discretion other than to strictly follow the guidelines set forth in the order. However, the summary judgment record shows that the parties, Boswell in particular, were concerned that an ambiguity existed in the PUC's order. Therefore, because the intent of the PUC is at the forefront of this dispute, we find it appropriate to consider the application that gave rise to the Final Order. *See, e.g., Airport Coach Serv., Inc.*, 518 S.W.2d at 574. The issue of the PUC's intent is a question of law. *Id.*

The application, which was approved by the PUC as submitted, examined three possible routes or corridors through which the Brazos Electric transmission line could be constructed. All three routes parallel the existing TU Electric line, in whole or in part. Based on Brazos Electric's cost and environmental impact analysis, the route that was ultimately approved did not warrant paralleling the TU Electric line across the South tract. In fact, that particular route was preferred because it was shorter, affected less residential area, affected fewer habitable structures, required fewer poles, crossed fewer roads, and was less expensive than the other two alternatives (including an alternative that paralleled the TU Electric line the entire length of the South tract). Thus, the approved route lessened the impact on the environment, surrounding residences, roads, and range land, and made acceptable use of existing corridors. In short, according to the summary judgment evidence, it was unwarranted for Brazos Electric to construct the

transmission line differently than as proposed. Boswell provided no summary judgment proof to the contrary.

After considering the PUC order in conjunction with the application that was actually approved, we hold as a matter of law that the intent of the PUC was to permit construction of the Brazos Electric transmission line as proposed in the application, *i.e.,* that the line would traverse the South tract tangent to, not parallel with, the existing TU Electric line.

There being no summary judgment evidence to the contrary, we conclude that Brazos Electric did not abuse its discretion. Accordingly, we hold that the trial court properly granted Brazos Electric's motion for partial summary judgment. Points of error one and two are overruled.

## ADMISSION AND EXCLUSION OF EVIDENCE

In her third through sixth points of error, Boswell contends that the trial court erred and abused its discretion in excluding from evidence a concept plan, an appraisal report, two plat maps, and a will, all of which Boswell argues were relevant and material to the issues in the case. In her seventh point of error, Boswell further complains about the admission of comparable sales data relating to a "matched pair" of tracts located outside Parker County.

### A. Standard of Review

Preliminary questions concerning the admissibility of evidence are determined by the trial court whose ruling will not be overturned on appeal absent an abuse of discretion. TEX.R.CIV.EVID. 104(a); *see Champlin Oil & Refining Co. v. Chastain,* 403 S.W.2d 376, 389 (Tex.1965); *Steenbergen v. Ford Motor Co.,* 814 S.W.2d 755, 760 (Tex. App.—Dallas 1991, writ denied), *cert. denied,* 121 U.S. 58, 113 S.Ct. 97, 121 L.Ed.2d 58 (1992). Further, error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. TEX.R.CIV.EVID. 103(a).

The test for determining whether an abuse of discretion occurred is not whether the facts present an appropriate case for the trial court's action; rather, the test is whether the trial court acted without reference to any guiding rules and principles, or in other words, acted in an arbitrary and unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The determination of whether a trial court abused its discretion is a question of law. *Jackson v. Van Winkle*, 660 S.W.2d 807, 810 (Tex.1983).

## B. Evidentiary Rulings

### 1. Concept Plan

In her third point of error, Boswell contends that the trial court erred by excluding from evidence a concept plan depicting a nonexistent, hypothetical subdivision of both the North and South tracts. The record shows that before trial, Brazos Electric filed a motion in limine in which it sought to exclude the concept plan on the grounds that it was prepared solely for the purpose of enhancing damages and would be prejudicial. During a hearing on that motion, Boswell argued that the concept plan was admissible, not to prove value, but instead for the limited purpose of showing the prospective uses for which the subject property, more particularly the South tract, was reasonably adaptable. In addition, Boswell argued that the concept plan would show how the easement or right-of-way damaged the South tract by restricting, impeding, or making more difficult, future subdivision of the property for residential or commercial use.

In response, Brazos Electric argued that the concept plan was inadmissible because (1) the subject property is rural, open pastureland used solely for grazing cattle, (2) Boswell's own appraisal expert concluded that the highest and best use for the property was to hold it for future investment, and (3) the concept plan was prepared after Brazos Electric began condemnation proceedings. Concluding that the evidence was speculative

and prejudicial, the trial court granted Brazos Electric's motion in limine. The trial court also sustained Brazos Electric's objections to the admission of the concept plan, both after Boswell's offer of proof and during trial.

When only a portion of the subject property is taken in a condemnation proceeding, the "just compensation" that the owner is entitled to consists of two elements: (1) the market value of the part taken, and (2) the damage to the remainder due to the taking and construction of the improvement for which it was taken. *State v. Windham*, 837 S.W.2d 73, 75–76 (Tex.1992) (citing *State v. Carpenter*, 126 Tex. 604, 609, 89 S.W.2d 194, 197 (1936)). "Market value" is the price that the property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it. *Carpenter*, 89 S.W.2d at 202. In deciding market value, the jury is permitted to consider all of the uses to which the property is reasonably adaptable and for which it is, or in all reasonable probability will become, available within the foreseeable future. *City of Austin v. Cannizzo*, 153 Tex. 324, 334, 267 S.W.2d 808, 815 (1954).

The general rule in condemnation cases, however, is that when the property condemned is raw acreage, as in this case, it is improper to admit evidence of hypothetical, nonexistent subdivisions. *Delhi Gas Pipeline Corp. v. Richards*, 659 S.W.2d 861, 864 (Tex.App.—Tyler 1983, no writ); *Lower Nueces River Water Supply Dist. v. Collins*, 357 S.W.2d 449, 452 (Tex.App.—San Antonio 1962, writ ref'd n.r.e.). The rationale behind exclusion of the such evidence is that it tends to cause the jury to value the land as lots, presumably at a higher market value. *Lower Nueces River Water Supply Dist.*, 357 S.W.2d at 452. The only recognized exception to this rule is that such plans are admissible in evidence where they are relevant to prove some issue in the case and are limited to that purpose. *Id.*[3] We conclude that the

---

**3.** We note with particular interest that these common law principles peculiar to condemnation proceedings are not inconsistent with the more recently promulgated Texas Rules of Civil Evidence. Under those rules, relevancy is the cornerstone of admissibility. *See* Tex.R.Civ.Evid.

concept plan in this case does not fall within the exception.

Boswell did not offer the concept plan as direct evidence of the value of the subject property; rather, she offered the plan to show the adaptability of the property for subdivision purposes and as evidence of the damage to the remainder occasioned by the construction of Brazos Electric's transmission line. However, there was no dispute at trial that the highest and best use of the subject property was its current use—holding for future investment. Any development was not projected to occur in the reasonably immediate future. Indeed, Boswell's own expert witness testified that no public right-of-way abutted the property and that he had no knowledge regarding soil conditions, water and sewer availability, or planned road construction. Although the concept plan was excluded from evidence, Boswell was not limited in the presentation of testimony showing that the subject property was adaptable to use as a subdivision, nor its value because of that subdivision. Thus, we conclude that exclusion of the concept plan was not an abuse of discretion. *See Lower Nueces River Water Supply Dist.,* 357 S.W.2d at 452; *Minyard v. Texas Power & Light Co.,* 271 S.W.2d 957, 959 (Tex.Civ.App.—Fort Worth 1954, no writ). Point of error three is overruled.

### 2. Appraisal report

■ In point of error four, Boswell contends the trial court erred in excluding from evidence an expert report that included the information their expert real estate appraiser relied on in formulating his opinion. Under rule 703 of the Texas Rules of Civil Evidence, the facts or data upon which an expert bases

an opinion need not be admissible in evidence if of a type reasonably relied upon by experts. Tex.R.Civ.Evid. 703. Under rule 705 of the Texas Rules of Civil Evidence, an expert may disclose the underlying facts or data upon which they base their testimony. Tex.R.Civ.Evid. 705.

■ However, the testimony may be admissible while at the same time the underlying facts or data are inadmissible. *Beavers v. Northrop Worldwide Aircraft Serv. Inc.,* 821 S.W.2d 669, 674 (Tex.App.—Amarillo 1991, writ denied). The use of the permissive word "may" does not indicate an absolute right of the expert to disclose all of the facts and underlying data. *Id.* The decision whether to admit or exclude evidence is one within the trial court's sound discretion. *Kramer v. Lewisville Memorial Hosp.,* 831 S.W.2d 46, 49 (Tex.App.—Fort Worth 1992), *aff'd,* 858 S.W.2d 397 (Tex.1993) (citing *Champlin Oil & Refining Co.,* 403 S.W.2d at 389).

In the case before the court, the trial court heard objections that the report contained: information of undetermined reliability; information of a cumulative nature merely to bolster testimony; information for which there was no testimony; hearsay; references to previously excluded evidence; and information that Boswell's expert could not verify. In addition, counsel for Brazos Electric objected because counsel for Boswell offered it on re-direct (not on direct), thus depriving counsel for Brazos Electric an opportunity to cross-examine concerning the report. In light of these factors, the trial court sustained Brazos Electric's objection. We hold that the trial court did not abuse its discre-

---

401–403. For evidence to be admissible, it must be relevant as defined in rule 401. To meet the relevancy test under rule 401, the offered evidence must first have probative value; that is, it must logically tend to make a particular proposition more or less likely. Second, that proposition must be of consequence to some issue in the trial. *See Service Lloyds Ins. Co. v. Martin,* 855 S.W.2d 816, 822 (Tex.App.—Dallas 1993, no writ), describing relevancy under rule 401 of the Texas Rules of Civil Evidence.

To determine relevancy, courts look at the purpose for offering the evidence. The relevancy test is satisfied if there is directly or by inference

some logical connection between the fact offered and the fact to be proved. *Id.* Although relevant, a trial court may nevertheless exclude evidence if, on balance, its probative value is substantially outweighed by the danger of one of the factors set forth in rule 403. In making its determination under rule 403, the trial court must: (i) identify the probative value of the proffered evidence; (ii) identify the costs of admitting the evidence; and (iii) weigh one against the other. If the dangers substantially outweigh the probative value of the proffered evidence, it should be excluded. *Service Lloyds Ins. Co.,* 855 S.W.2d at 825.

tion in excluding the report. Point of error four is overruled.

### 3. Plat maps

 In point of error five, Boswell contends that during cross-examination, she was entitled to admit supporting data used by Brazos Electric's expert into evidence. At trial, Brazos Electric's appraisal expert testified about the value of Boswell's property. On cross-examination, the expert witness expressly stated that he used both his own hypothetical plat, as well as one prepared by one of Boswell's experts, in order to come to the conclusions he reached in testifying. Boswell attempted to introduce these hypothetical plat maps that depicted a subdivision of the South tract. As with the concept plan, the trial court excluded admission of the plat maps on the ground that they were too speculative.

 Boswell argues that under rule 705 of the Texas Rules of Civil Evidence, the plat maps were admissible as the "underlying facts or data" from which the expert formulated his opinions. The pertinent portion of rule 705 reads, "The expert *may* in any event *disclose* on direct examination, *or be required* to *disclose* on cross-examination, the underlying facts or data." TEX.R.CIV.EVID. 705 (emphasis added). The trial court has discretion to exclude such evidence by virtue of the use of the permissive word "may" when an expert attempts to introduce evidence on direct examination.[4] However, by virtue of the plain language of rule 705, the court is "required" to allow disclosure of evidence to discredit an expert on cross-examination.

Brazos Electric has not presented (nor has this court found) any caselaw which provides a trial court the discretion to prevent the admission of underlying fact evidence during cross-examination. Boswell argues that *Liquid Energy Corp. v. Trans–Pan Gathering, Inc.*, 758 S.W.2d 627, 637 (Tex.App.—Amarillo), *vacated on other grounds* 762 S.W.2d 759 (Tex.App.—Amarillo 1988, no writ), supports

her argument that evidence relied on by the expert must be admitted. In that case, the court held "LEC was entitled to the disclosure of the supporting data for Edwards' opinion on cross-examination, and it is apparent from the extensive and detailed cross-examination, that LEC exercised its entitlement." *Liquid Energy Corp.*, 758 S.W.2d at 637 (citation omitted).

Yet the holding of *Liquid Energy* only supports the proposition that the trial court has no discretion in requiring the *disclosure* of underlying evidence and permitting cross-examination based on such evidence. There is a distinct but important difference between disclosure, in which there is no discretion, and admission into evidence, where the trial court enjoys discretion.

Such discretion to allow verbal cross examination about the plats, but to disallow admission of the plats themselves, might well have been exercised by the trial court under the belief that the offering of the plats for purposes of impeachment and cross-examination was a subterfuge to get them before the jury for the purposes for which the trial court had already disallowed them. Perhaps it was done under a belief that the prejudicial effect substantially outweighed the probative value of the use of the plats themselves in cross-examination. In any event, we hold that while rule 705 compels disclosure, under the facts of this case it does not compel admission. We further hold that the trial judge did not abuse his discretion in disallowing the admission of the proffered evidence for purposes of cross-examination.

In the case before us today, the trial court allowed disclosure of the existence of both plat maps. Having addressed the maps and their use by Brazos Electric's expert, Boswell was free to continue with cross-examination about the maps. Error would only have occurred if Boswell had been prevented from pursuing such a cross-examination by the trial court. Since these are not the facts before the court,[5] we hold that the trial court did not abuse its discretion in excluding the plats. Point of error five is overruled.

---

**4.** See discussion and *Beavers,* 821 S.W.2d at 674, in point of error four above.

**5.** We note that the facts of this case distinguish it from *Avila v. United States Fidelity & Guaranty*

*Co.,* 551 S.W.2d 453, 457 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.), and its post rule 705 progeny. The *Avila* court of appeals ruled that the trial court erred in admitting *testimony*

#### 4. Will

In point of error six, Boswell contends the trial court erred in excluding from evidence a will with restrictive covenants. Boswell's son, John Boswell, testified that his great-grandmother bought the two tracts of land at issue in this case and bequeathed them to a trust for the benefit of Boswell and her brother. He further testified that subject to the will, the trust created a prohibition against conveyance or sale of the properties until the trust's expiration in March 1989. This testimony was uncontroverted. Counsel for Boswell later attempted to introduce the great-grandmother's will into evidence.

The trial court upheld an objection that the will was cumulative. Cumulative evidence can be admitted when it adds "substantial weight to the offering parties' case." *Sims v. Brackett,* 885 S.W.2d 450, 454 (Tex.App.—Corpus Christi 1994, no writ). However it may be excluded if its probative value is substantially outweighed by its cumulative nature. TEX.R.CIV.EVID. 403. The trial court weighed the probative value of the will in light of the fact that the earlier testimony was uncontroverted and found it unnecessarily cumulative. This was a matter within the discretion of the trial court. We hold that the trial court did not abuse its discretion in excluding the will. Point of error six is overruled.

#### 5. "Matched Pair" data

In point of error seven, Boswell contends the trial court erred by admitting "matched pair" data from a different geographical area. Donald Sherwood, Brazos Electric's valuation witness, testified over objection that there was little damage to the remainder on the South tract caused by the construction of the transmission line and that only a relatively small, three-acre area (located at the intersection of the Brazos Electric line and the TU Electric line) might be affected. Sherwood based his opinion on "paired sale" or "matched pair" analysis.[6] According to Sherwood, this type of analysis was the best way to determine what effect, if any, the construction of a transmission line would have on the South tract. Conceding the data's relevancy to the issue of value, Boswell argues that the information was highly prejudicial because the "matched pair" tracts lie outside Parker County where the subject property is located.

On balance, we conclude that the "matched pair" data was not so prejudicial as to warrant exclusion. Boswell's own valuation expert testified that the "paired sales" approach was the ideal model for evaluating the effect of constructing a transmission line on a parcel of property. Sherwood's "paired sales" information included data from the sale of two identical tracts of land. One tract was encumbered with an electrical transmission line easement; the other tract was not. Because the tract encumbered by the easement sold for more than the tract without encumbrance, Sherwood concluded Boswell's property, encumbered by a similar easement, experienced little or no damage to the remainder. Boswell has cited no authority showing that evidence on "paired sales" comparisons must originate in the same geographical area when it is used to demonstrate that the property has sustained little or no damage. We hold that the trial court did not abuse its discretion in admitting the evidence. Point of error seven is overruled.

The judgment of the trial court is affirmed.

---

which was based on underlying evidence, a set of X-rays. The *Avila* court excluded the testimony, because the X-rays themselves were not entered into evidence, thus there was no opportunity to use them for cross-examination on the testimony concerning them.

In the case *sub judice,* the testimony was elicited by the appellant on cross examination, in order to force admission of the plats. Additionally, the trial court had already ruled that the plats were prejudicial or led to confusion of the jury, factors absent concerning the X-rays in *Avila.*

6. A "paired sale" analysis is a comparison of two or more pieces of property that, with one exception, have the same characteristics. A comparison of their value (sale price) identifies the effect, if any, that the one different characteristic has on the market value of the property.