In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00002-CV
_____

IN RE COMMITMENT OF DANIEL BOCANEGRA JR.

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 10-02-01844 CV

MEMORANDUM OPINION

The State filed a petition seeking the involuntary civil commitment of Daniel Bocanegra Jr. as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012). A jury found Bocanegra suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.* § 841.003 (West 2010).

The State was required to prove beyond a reasonable doubt that Bocanegra is a sexually violent predator. *See id.* § 841.062(a) (West 2010). The statute defines "sexually violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). A "behavioral abnormality" is a

1

"congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2012).

In 1973, Bocanegra pleaded guilty to rape. He was sentenced to five years in prison. In 1982, he pleaded guilty to aggravated rape and was sentenced to thirty years in prison. He was released on mandatory supervision parole in 1999, but was required to continue sex offender treatment. While continuing his sex offender treatment and out on supervised parole, he molested his step-daughter on at least thirteen occasions. In 2007, he pleaded guilty to indecency with a child, his step-daughter, by contact. He was sentenced to five years in prison. He was serving his sentences for the offenses of aggravated rape and indecency with a child at the time of trial.

Bocanegra testified that he is not a sexually violent predator because he did not kill any of his victims. He stated that when he committed his offenses he was "selfish and narrow-minded." He says now he is older, more mature, ready to take responsibility for his actions, and is sorry for the offenses he committed.

Dr. Jason Dunham, a forensic psychologist, testified for the State. Dunham explained that, in performing evaluations to determine whether a person suffers from a behavioral abnormality, Dunham reviews records such as police reports, victim statements, judgments, parole records, medical records, education records, prison

disciplinary records, other professional evaluations, and depositions. In evaluating Bocanegra, Dunham relied on these same types of documents, an interview, and actuarial testing in forming his opinion. Based on his review of the case, Dr. Dunham testified Bocanegra had somewhere between nine and eleven victims. Dunham explained that Bocanegra gave differing accounts of his offenses to different people.

Dunham testified that, based on Bocanegra's history, Dunham does not believe the seven years of sex offender treatment Bocanegra received will prevent him from committing another sex offense. Bocanegra had a disciplinary for sexual misconduct in prison in 2009. Dunham explained that this disciplinary shows that Bocanegra is sexually deviant. Dunham identified the following risk factors for Bocanegra's reoffending: he offended after incarceration and while on supervision; he offended during and after significant sex offender treatment; he has never successfully completed sex offender treatment; and he chose victims who were strangers and a victim who was a relative. Other risk factors identified by Dunham are the large number of victims, the range in age of Bocanegra's victims, the level of force used on his victims, the thirty-one year span of Bocenegra's sexual offenses, the amount of planning that he put into his offenses, his reoffending while married, and his history of violent and non-violent crimes.

Dunham administered actuarial tests to Bocanegra. On the Static-99R test, Bocanegra scored in a moderate/high risk category for being reconvicted within five to ten years. On the MnSOST-R, he originally scored a 10 and then later a 12 when Dunham

3

had more information about Bocanegra's adolescent antisocial behavior. A "12" on the MnSOST-R test places that person in a high risk category for being rearrested for a sexual offense within six years. Dunham stated that the fact that Bocanegra has not offended since 2004 is not significant because the types of victims he targets are not in prison.

Dunham diagnosed Bocanegra with antisocial personality disorder, sexual deviancy (paraphilia not otherwise specified – nonconsent), sexual abuse of a child, and alcohol abuse. Dunham testified that Bocanegra continues to contradict himself. Although Bocanegra states that he has remorse for his actions, he actually does not take responsibility: he blames his victims and minimizes his offenses. Dunham testified Bocangera does not appreciate his high risk for reoffending and would not put safeguards in place to avoid reoffending. Dr. Dunham concluded that Bocanegra suffers from a behavioral abnormality that makes him likely to commit a predatory act of sexual violence.

In evaluating Bocanegra to determine whether he suffers from a behavioral abnormality, Dr. Lisa Clayton, a forensic psychiatrist, also testified for the State. Clayton interviewed him and reviewed the same type of documents as Dunham. Diagnosing Bocanegra with sexual sadism, pedophilia nonexclusive type with attraction to females, antiosocial personality disorder, and hypertension, Clayton concluded that Bocanegra suffers from a behavioral abnormality that makes him likely to commit future acts of

4

predatory sexual violence. She identified similar risk factors for Bocanegra's reoffending as those testified to by Dunham. Clayton testified that it is her medical opinion that Bocanegra is not a changed person and still suffers from a behavioral abnormality.

Another testifying expert was Dr. Walter Quijano, a clinical psychologist. He explained that in his opinion, although Bocanegra is a repeat sex offender, he does not suffer from a behavioral abnormality. In his evaluation of Bocanegra, Dr. Quijano employed a methodology similar to Dunham's and Clayton's. Quijano described Bocanegra's answers to his interview questions as having poor reliability because the details of his offenses contradicted facts in the records Quijano reviewed.

Quijano testified he does not believe Bocanegra meets the criteria of behavioral abnormality because "[h]is volitional and emotional capacity is intact." Quijano based his opinion that Bocanegra "has the ability to control himself" on the following factors: six years elapsed between Bocanegra's first and second offenses; the offense against Bocanegra's step-daughter was a contact offense which shows an ability to control his behavior; Bocanegra has had four wives and two other relationships but no reports of rape were made by these women; and he has had only one sexual disciplinary during his thirty years of incarceration.

Quijano diagnosed Bocangegra with paraphilia (sexual deviancy) and antisocial personality disorder, and Quijano identified some of the same risk factors for Bocanegra's risk of reoffending as testified to by Dunham and Clayton. Quijano also

5

identified positive factors regarding Bocanegra's risk for reoffending: he has work skills and an employment history; he is not a psychopath; he is older; he says he is sorry for his actions; he asked to resume and complete sex offender treatment; and he has family at home.

Bocanegra contends the evidence is factually insufficient to support the jury's finding that he is a sexually violent predator, because the State failed to prove beyond a reasonable doubt that he currently suffers from a behavioral abnormality. In reviewing the factual sufficiency of the evidence in a civil case where the burden of proof is beyond a reasonable doubt, an appellate court weighs the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that compels ordering a new trial. *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied). Bocanegra specifically argues that the State failed to provide any evidence that he is volitionally impaired or suffers from any of the mental disorders the State's experts diagnosed. He challenges the sufficiency of the evidence that he has serious difficulty in controlling his behavior, and he contends the State's experts did not consider that standard in arriving at their conclusions.

The jury determines the credibility of the witnesses and the weight to be given their testimony, and whether to believe some testimony and disbelieve other testimony. *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied) (citing among others, *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App.

1994)). The jury may draw reasonable inferences from the evidence. *See Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The jury heard the opinions of the State's experts. In addition to giving weight to those experts' opinions that Bocanegra has a behavioral abnormality that makes him likely to commit a predatory act of sexual violence, the jury could also reasonably infer Bocanegra's lack of control from the other evidence in this case. That evidence includes Bocanegra's past behavior, his history of committing offenses while out on mandatory supervision parole and while in sex offender treatment, his offending after years of sex offender treatment, and his own testimony. The jury could weigh Quijano's testimony and disregard his opinion that Bocanegra has the ability to control himself. A rational jury could find beyond a reasonable doubt that Bocanegra presently has serious difficulty in controlling his behavior and suffers from a behavioral abnormality that makes him likely to commit future acts of sexual violence. The evidence is factually sufficient to support the jury's verdict. Issue one is overruled.

Bocanegra argues the trial court erred in admitting, over his hearsay and unfair-prejudice objections, the experts' testimony about the details of his convictions. Rule 705(a) of the Texas Rules of Evidence provides that an expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data on which the expert bases an opinion. Tex. R. Evid. 705(a); *Boswell v. Brazos Elec. Power Coop., Inc.*, 910 S.W.2d 593, 603 (Tex. App.—Fort Worth 1995, writ denied). Rule 705(d) provides:

> When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

Tex. R. Evid. 705(d); *Stam v. Mack*, 984 S.W.2d 747, 750 (Tex. App.—Texarkana 1999, no pet.) (citing *Sosa ex rel. Grant v. Koshy*, 961 S.W.2d 420 (Tex. App.—Houston [1st Dist.] 1997, writ denied)).

Prior to trial, Bocanegra filed a "Motion to Exclude Unreliable Hearsay Evidence." When the State began questioning Dr. Dunham regarding the details of Bocanegra's offenses, Bocanegra urged his motion, objected on the basis of hearsay, and argued that the unfair prejudice presented by those details outweighed their probative value. The trial court overruled the objection. Bocagnegra requested an instruction on the hearsay nature of the records relied on by Dunham. The trial court gave the following limiting instruction to the jury:

> As we proceed, Ladies and Gentlemen, I will just note to you that generally there's something called hearsay evidence or testimony that is not admissible in a trial. Hearsay is typically, a shorthand rendition, something that is said outside of the courtroom and brought in and used as evidence in the trial.
> Of course, the Rule has defined depositions, request for admissions, interrogatories as discovery and is not hearsay; but a witness may have testified today about things seen outside the courtroom, read outside the courtroom and talked about that. That hearsay information contained in records reviewed by an expert is allowed into evidence before you for the purpose of showing the basis for the expert's opinion, not for the basis of the truth of the matter contained in those outside statements, documents. It

8

may be true. It may not be true, but it's the basis of this witness' opinions, expert opinions.

Bocanegra did not object to the instruction and did not ask for a continuing objection based on hearsay or unfair prejudice.

On appeal, Bocanegra specifically challenges that part of Dunham's testimony after the limiting instruction where Dunham states Bocanegra was lying about the offenses because Bocanegra's version of the events differed from the records. Contending this testimony by Dunham exceeded the scope of the limiting instruction, Bocanegra argues the State was offering the records to prove the truth of the matter asserted rather than to establish the basis for Dunham's opinion. Bocanegra also maintains that Clayton's testimony about the effect of Bocanegra's offenses on his victims had no probative value regarding her diagnosis of Bocanegra's mental condition, and was not related to a prediction of future dangerousness.

Bocanegra did not object or request an instruction to disregard at either instance he now complains of on appeal. To preserve error for appellate review, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefore, and obtain a ruling. Tex. R. App. P. 33.1(a); *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003). Bocanegra failed to preserve these complaints for review. *See* Tex. R. Evid. 103(a)(1); *see also* Tex. R. App. P. 33.1(a); *In re Commitment of Frazier*, No. 09-10-00033-CV, 2011 WL 2566317, at *2 (Tex. App.—Beaumont June 30, 2011, no pet.)

(mem. op.). Furthermore, Bocanegra separately elicited from Dunham his opinion of Bocanegra's lack of trustworthiness. Issue two is overruled.

In Bocanegra's supplemental brief, he argues the Texas Supreme Court's opinion in *In re Commitment of Bohannan*, No. 10-0605, 2012 WL 3800317 (Tex. Aug. 31, 2012), has "essentially eliminated the requirement of a mental illness" from the statutory requirements for civil commitment under the SVP statute and the statute is therefore facially unconstitutional. As this Court recently stated in *In re Commitment of Anderson*, "We do not read the *Bohannan* opinion as eliminating a statutory requirement, or as altering the proof required under the statute to find that a person is a sexually violent predator." *In re Commitment of Anderson*, No. 09-11-00613-CV, 2013 WL 257162, at \*8 (Tex. App.—Jan. 24, 2013, no pet. h.). We overrule the issue in Bocanegra's supplemental brief.

Appellant's issues are overruled. The trial court's judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on September 14, 2012
Opinion Delivered January 31, 2013

Before Gaultney, Kreger, and Horton, JJ.

10