# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-14-00388-CV
_____

### IN RE COMMITMENT OF ROBERTO MARTINEZ

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-02-01502 CV**

### MEMORANDUM OPINION

The State of Texas filed a petition to commit Roberto Martinez (Martinez) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (SVP statute). A jury found that Martinez is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Martinez filed an appeal.

In his first and second appellate issues, Martinez challenges the legal and factual sufficiency of the evidence supporting the jury's finding that Martinez has serious difficulty controlling his behavior. In his third and fourth issues, Martinez

1

challenges the trial court's admission of certain testimony. We affirm the trial court's judgment.

## THE EVIDENCE

The jury heard Martinez's admissions to the State's requests for admissions wherein Martinez admitted being convicted in 1987 of indecency with a child, J.N.[1] Martinez admitted that as a result of that conviction he received a ten-year sentence, which was suspended, and he was placed on probation for ten years. The jury also heard Martinez's admission that he pleaded guilty in 2009 to indecency with a child, E.R., by sexual contact, and Martinez received a six-year prison sentence, which he was serving at the time of his commitment trial.

At trial, Martinez testified that a jury found him guilty of indecency against J.N., an eight-year-old friend of Martinez's nephew. Although Martinez admitted the incident occurred when J.N. had come over to Martinez's house to watch movies with Martinez and Martinez's nephew, he denied committing the offense. Martinez testified that he completed his ten-year probation term in 1997. Martinez admitted at trial that although the conditions of his probation required him, among

---

[1] We identify the victims by using initials that disguise their identities. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

other things, to not consume alcohol, he consumed alcohol "[o]n occasion" while on probation. He also testified that he learned in his sex offender treatment class "what we did wrong and what mistakes were done and how to improve."

Martinez explained at trial that he was currently incarcerated for the 2006 offense of indecency with a child by contact against thirteen-year-old E.R., whose relatives lived next door to Martinez and whose family Martinez had known for years. According to Martinez, E.R. came to Martinez's door and brought him ice cream and cake from a party next door. Martinez testified that he and E.R. began talking outside. Martinez told E.R. that E.R. was "getting hairy[,]" and E.R. told him that he was "starting to get hairy down there." After he was referred to his deposition testimony, Martinez admitted that he "probably -- might have[]" been the one that mentioned to E.R. that E.R. had a lot of hair "down there[.]"Martinez testified he hugged E.R. When asked during the commitment trial whether he grabbed E.R.'s penis and testicles that day, Martinez answered, "I don't recall. I guess I did[,]" and he admitted to "grop[ing] [E.R.]'s crotch." Martinez admitted he was "[a] little bit[]" intoxicated on the day of the offense, but he denied that he had a problem with alcohol. Martinez testified that after E.R. left, E.R.'s father, aunt, and uncle came over to Martinez's house. E.R.'s father confronted Martinez about the incident and they had an altercation. Martinez explained at his

commitment trial that he pleaded guilty to the offense, but that he did not commit the offense to arouse himself, but to warn E.R. about being sexually active with E.R.'s girlfriend.

At trial, Martinez denied being a sex offender. He testified that at the time of his commitment trial he was not enrolled in sex offender treatment, and he did not believe he needed sex offender treatment. Martinez denied being sexually aroused by children or ever having sexual fantasies involving children. Martinez explained he is sixty-five years old and he stated he did not have any sex drive. Martinez admitted to being arrested for sniffing glue and breaking a window when he was fourteen or fifteen years old, to being arrested for public intoxication when he was seventeen, and that he had sex with prostitutes when he was in high school. According to Martinez, he has not received any disciplinaries while he has been incarcerated. Martinez explained he is a religious man, he does not want to sexually reoffend against children, and he has no problems controlling his actions. Martinez testified that the jury should believe that he is not going to return to prison "[b]ecause [he] intend[s] to be back in with [his] music, be back in -- back working and just stay out of trouble and stay away from children." Martinez stated that he did not plan on drinking alcohol when he is released from prison.

Dr. Michael Arambula, a board-certified forensic psychiatrist, testified for the State. Based on his training, his experience, the records he reviewed, and his interview with Martinez, Dr. Arambula believes Martinez suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Arambula explained his methodology for assessing a behavioral abnormality, which he testified is consistent with the methodology used by other experts who do this type of evaluation. He stated that in reaching his opinion he reviewed some of Martinez's medical records, a prior mental health evaluation, prison administrative records, and legal records including victim statements and investigation records. Arambula explained that these types of records help him understand the clinical course of the medical or mental condition or illness, how serious it is, what kind of treatment interventions are appropriate, and the risk of relapse. He also stated that the records are important because "people who have sexual deviance and/or who are sex offenders, because of their illness, they tend to report things inaccurately. . . . And so if [he] took only what a sex offender says at face value, it would . . . tremendously skew [his] evaluation and make it unreliable." In determining whether Martinez has a behavioral abnormality, Arambula explained he considered the facts and details of Martinez's offenses that resulted in convictions because "just looking at the charge or the conviction may

5

not be enough information[]" to understand the "serious[ness] [of] the transgression[.]"Arambula testified that the records he reviewed and relied upon in forming his opinion are the type of records typically used by experts who do this type of evaluation.

Dr. Arambula testified that the investigative records regarding Martinez's first conviction "indicated that there had been a series of events where Mr. Martinez had begun slipping toys in the shorts" of his nephew and his nephew's friend, J.N., who was seven or eight years old. Arambula explained that the records revealed that Martinez was playing a game with the boys, "but in the process of taking the toy out of their shorts, he would coincidentally fondle" the boys. According to Arambula, six charges "began piling up[]" for these offenses that happened over time. Arambula testified that Martinez expressed no remorse for offending against the boys, and Martinez was "actually quite angry that he had been convicted."

Dr. Arambula testified that the records showed that in 2006 Martinez offended against thirteen-year-old E.R. Although Martinez told Arambula that Martinez touched E.R.'s genitals and commented to E.R. that E.R. was getting older and had to be careful, the records reflected that Martinez also offered to perform a sexual act on E.R. and commented that one day in the future he would

6

perform the sexual act on E.R. According to Arambula, although Martinez pleaded guilty to the offense, acknowledged touching E.R., and expressed remorse, Martinez "denied the sexual part of it."

Dr. Arambula diagnosed Martinez with sexual deviance and paraphilia NOS with pedophilic features. Dr. Arambula explained that Martinez's sexual deviance "involves his interactions with kids, is the mental condition that interferes with his emotional or volitional capacity that then causes him to act out sexually with minors and become a menace to their safety." Dr. Arambula testified that Martinez's personality pathology and issues with alcohol would both aggravate his sexual deviance. Dr. Arambula stated that in regards to emotional and volitional capacity, Martinez's offense against E.R., whom Martinez had known for a long time and who had trusted Martinez, showed how the illness of sexual deviance "kind of gets in the way sometimes to where a person can't think through things[]" and "interfere[s] with brain function." Arambula explained that he "took note" of the fact that Martinez reoffended almost twenty years after his first offense and after completing probation where he should have "got[ten] something out of treatment[,]" and that "when something shows up again, then that shows the chronic nature of the illness." According to Dr. Arambula, the paraphilia associated with pedophilic features is chronic and does not go away.

7

Dr. Arambula identified the following factors indicating that Martinez has a high risk for recidivism: presence of sexual deviance, multiple acts alleged against one of his victims, blatant denial and a history of not cooperating with the conditions of his probation like going to treatment and reporting as a sex offender, prior alcohol issues and the fact he does not see anything wrong with drinking again, his victims were boys, and his personality pathology. Dr. Arambula identified the following factors would be positive or neutral: Martinez has a "fairly good" occupational history and was trying to better his employment status, he has "been largely out of trouble in TDC[]" and "hasn't been disruptive[,]" and he does not have much violence associated with him. As for Martinez's testimony at trial that he has no sex drive, Dr. Arambula testified that he has heard Martinez give different responses regarding his sex drive so Arambula did not consider it a positive or a negative.

Dr. Arambula testified that as part of his evaluation he also reviewed the results of the Static-99 actuarial administered to Martinez by a psychologist. According to Arambula, Martinez scored a "4" on the actuarial, which is associated with moderate-to-high risk of sexually reoffending. When asked whether he considered Martinez to be "the average sex offender[,]" Dr. Arambula explained, "[t]he behavioral abnormality, the spirit of the statute was created for

8

the sex offenders who are not average and are actually -- are more dangerous. I will say he's not the most dangerous sex offender I've seen in these types of conditions; but the number of victims, his blatant denial really stands out to me that he's a treatment failure, those all put him past the threshold[.]"Arambula testified that one of the issues in his evaluation of Martinez that "really stood out" was Martinez's "very profound denial system[]" that was "bigger than what [Arambula was] used to seeing."

SUFFICIENCY OF THE EVIDENCE

In issues one and two, Martinez contends that the evidence is legally and factually insufficient to support the jury's verdict because the State failed to present evidence demonstrating that Martinez has serious difficulty controlling his behavior. Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally

9

sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In an SVP case, the State must prove, beyond a reasonable doubt that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* at § 841.003(a) (West Supp. 2014). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2014). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

The jury was entitled to draw reasonable inferences from basic facts to determine ultimate fact issues, and to resolve conflicts and contradictions in the

evidence by believing all, part, or none of the witnesses' testimony. *In re Commitment of Barbee*, 192 S.W.3d 835, 842 (Tex. App.—Beaumont 2006, no pet.). "[P]roof of serious difficulty in controlling behavior[]" is required to civilly commit a defendant under the Act. *See Kansas v. Crane*, 534 U.S. 407, 413 (2002). Martinez's current difficulty in controlling his behavior can be inferred from his past behavior, his own testimony, and the expert's testimony. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *13 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). Dr. Arambula's opinion that Martinez has a behavioral abnormality, as defined by the SVP Act, necessarily entails a related finding that he has "serious difficulty controlling his behavior." *See Almaguer*, 117 S.W.3d at 505 (quoting *In re Commitment of Browning*, 113 S.W.3d 851, 863 (Tex. App.—Austin 2003, pet. denied)).

Considering all the evidence in the light most favorable to the verdict, we conclude the jury could reasonably find beyond a reasonable doubt that Martinez has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Mullens*, 92 S.W.3d at 887. The record does not reflect a risk of injustice that compels granting a new trial. *See Day*, 342 S.W.3d at 213. We overrule issues one and two.

11

In his third issue, Martinez argues that the trial court erred in allowing testimony that was needlessly cumulative. Martinez also argues the probative value of the testimony was substantially outweighed by unfair prejudice. He contends that the State's continued questioning of Martinez regarding his first conviction, after Martinez had already denied committing the offense, and the State's leading questions to Martinez regarding "unsubstantiated allegations" of Martinez's molestation of other children "served no purpose but to infuriate the jury against Appellant."

We review a trial court's decision concerning the admissibility of evidence for an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts arbitrarily and unreasonably. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Even if a trial court errs in admitting evidence, we will reverse the judgment only if the error by the trial court probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *See* Tex. R. App. P. 44.1(a).

Assuming without deciding that the trial court abused its discretion in allowing the State to ask further questions of Martinez regarding his first conviction after the jury had already heard his responses to admissions wherein he denied committing the offense, we cannot conclude on this record that the questioning probably caused the rendition of an improper judgment. *See id.* If anything, the jury heard Martinez deny committing the offense more than once. As to the State's questioning of Martinez regarding whether he molested other named children, Martinez's counsel objected after Martinez had answered the line of questions and after the State moved on and asked a different question regarding the age of one of the named children. Accordingly, this argument was not properly preserved for our review. *See* Tex. R. App. P. 33.1(a)(1) (preserving error for appellate review requires the complaining party to show that he presented his complaint to the trial court in a timely request, objection, or motion and that the trial court ruled on the request). Issue three is overruled.

In his fourth issue, Martinez asserts that the trial court erred in allowing Dr. Arambula's testimony regarding information in the records concerning Martinez's crimes and sexual conduct as basis evidence. Rule 705(a) of the Texas Rules of Evidence provides that an expert may disclose on direct examination or be required to disclose on cross-examination the underlying facts or data on which the expert

13

bases an opinion. *See* Tex. R. Evid. 705(a); *Boswell v. Brazos Elec. Power Coop., Inc.*, 910 S.W.2d 593, 602 (Tex. App.—Fort Worth 1995, writ denied). Rule 705(d) provides:

> When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

Tex. R. Evid. 705(d) (2014, superseded 2015); *see Day*, 342 S.W.3d at 198-99.

To preserve error concerning the admission of evidence, a party must timely object, stating the specific ground of objection, if the specific ground is not apparent from the context. Tex. R. Evid. 103(a)(1); *see also* Tex. R. App. P. 33.1(a). The trial court granted Martinez a running objection as to hearsay and provided the jury with the following limiting instruction:

> THE COURT: Okay. Ladies and gentlemen of the jury, I'm going to give you a limiting instruction. Hearsay is a statement other than one made by the declarant while testifying in a trial or hearing, offered to prove the truth of the matter asserted. Certain hearsay information contained in records reviewed by experts were admitted before you through expert testimony. Such hearsay is admitted only for the basis of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.

However, Martinez did not object to Dr. Arambula's testimony on the basis that the details of the offenses were prejudicial, and he has waived that objection. *See* Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a).

This Court has upheld a trial court's decision to allow an expert to testify about the details of such offenses in SVP cases when the expert uses the details as a basis for his opinion. *See In re Commitment of Alvarado*, No. 09-13-00217-CV, 2014 Tex. App. LEXIS 3343, at \*\*25-29 (Tex. App.—Beaumont Mar. 27, 2014, pet. denied) (mem. op.); *In re Commitment of King*, No. 09-13-00255-CV, 2014 Tex. App. LEXIS 724, \*\*3-7 (Tex. App.—Beaumont Jan. 23, 2014, no pet.) (mem. op.). Dr. Arambula explained the facts he considered in forming his opinions, and how those facts affected his evaluation. The trial judge could reasonably conclude the evidence assisted the jury in weighing the testimony. *See In re Commitment of Ramsey*, No. 09-14-00304-CV, 2015 Tex. App. LEXIS 2844, at \*23 (Tex. App.—Beaumont Mar. 26, 2015, pet. denied) (mem. op.). The trial judge could also reasonably conclude the expert's testimony was not unfairly prejudicial. *See In re Commitment of Ford*, No. 09-11-00425-CV, 2012 Tex. App. LEXIS 2221, at \*\*4-5 (Tex. App.—Beaumont Mar. 22, 2012, no pet.) (mem. op.); *Day*, 342 S.W.3d at 199. As noted earlier, the trial court provided the jury with a limiting instruction. We presume the jury followed the trial court's limiting instruction. *Day*, 342

S.W.3d at 199. On this record, we cannot conclude that the trial court erred in overruling the objection, or that the trial court's limiting instruction was insufficient. Issue four is overruled. We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on February 18, 2015
Opinion Delivered September 24, 2015

Before Kreger, Horton, and Johnson, JJ.