In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00217-CV
_____


IN RE COMMITMENT OF LUIS ALVARADO

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 12-06-06637-CV

**MEMORANDUM OPINION**

A jury found appellant Luis Alvarado to be a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. *See* Tex. Health & Safety Code Ann. §§ 841.001-841.151 (West 2010 & Supp. 2013) ("SVP" statute). Alvarado appeals from the final judgment and raises seven issues which we have grouped together as follows: (1) the trial court erred in denying his summary judgment motion because the State lacked statutory authority to proceed once the "clinical assessment" found Alvarado did not have a behavioral abnormality, which also means the State could not produce "corresponding

1

documentation," and failed to meet the pleading requirements; (2) there was insufficient evidence supporting the jury's finding that Alvarado has a condition that makes him likely to engage in a predatory act of sexual violence; (3) the trial court erred in admitting evidence about his offenses and letters from his victims, as well as certain testimony from the State's experts; (4) the trial court erred in granting a partial directed verdict on the repeat sex offender element. We conclude Alvarado's issues have no merit, and affirm the trial court's judgment.

THE CONVICTIONS

In 2003, Alvarado pleaded guilty to one count of aggravated sexual assault of a child and no contest to another count of aggravated sexual assault of a child. The 2003 convictions were for offenses Alvarado committed in 1995 and 1996. The children he was convicted of sexually assaulting are two of his biological daughters, J.A. and L.A. Both were under the age of fourteen at the time of the offenses. He received a ten year sentence for each conviction, to be served concurrently. At the time of the civil commitment trial, Alvarado was serving his concurrent sentences.

The record indicates that Alvarado sexually abused L.A. three to four times a week for about three years and sexually abused J.A. about four or five times a week for three to five years. The record includes testimony regarding reports that

2

Alvarado on occasion tied up the girls and sexually assaulted them, and that he also used various implements during the assaults.

THE SVP STATUTE

The State filed an involuntary civil commitment petition, alleging that Alvarado is a "sexually violent predator." A person is a "sexually violent predator" subject to commitment if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. § 841.003(a) (West Supp. 2013). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2013).

MOTION FOR SUMMARY JUDGMENT

In Alvarado's first issue, he asserts the trial court erred in denying his motion for summary judgment. He contends the State lacked statutory authority to file a civil commitment petition against him once the evaluation conducted by Dr. Christine Reed, the consultant for the Texas Department of Criminal Justice ("TDCJ"), concluded he did not suffer from a behavioral abnormality. Alvarado

3

argues that the initial expert's clinical assessment (completed during the statutory administrative screening process for determining whether a person is eligible to be civilly committed as a sexually violent predator) "should conclude that the person has a behavioral abnormality before the State can file a civil-commitment petition." Alvarado contends that once Dr. Reed failed to conclude that Alvarado has a behavioral abnormality, the State should not have proceeded with the commitment proceeding. Further, he contends that the TDCJ could not provide the State's attorney with the "corresponding documentation" required by section 841.023(b) once the initial expert found that Alvarado does not have a behavioral abnormality, and that the State's petition therefore fails to comply with the requirement in section 841.041(a) that the petition state "facts sufficient to support the allegation" that appellant "is a sexually violent predator."

In other words, Alvarado contends that in the "clinical assessment" the expert must conclude that the inmate has a behavioral abnormality in order for the TDCJ or the State to proceed any further with the commitment. We disagree.

We review a trial court's grant or denial of a motion for summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211 (Tex. 2003). The issue of statutory construction is reviewed de novo. *Loaisiga v. Cerda*, 379 S.W.3d 248, 254-55 (Tex. 2012). We give effect to the Texas Legislature's

4

intent. S*ee Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Id.* To determine whether the language in a statute creates a jurisdictional requirement, we must apply statutory interpretation and examine the statute's plain language. *City of DeSoto v. White*, 288 S.W.3d 389, 393-95 (Tex. 2009). If a statutory provision is jurisdictional, the requirement implicates the trial court's power to decide the case. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 307 (Tex. 2010). In the context of the SVP statute, this court has previously examined other sections of the SVP statute to determine if the respective provision or language created a jurisdictional requirement. For example, this court has held that whether or not the person released on parole has an "anticipated release date" is not jurisdictional. *See In re Commitment of Evers*, No. 09-11-00430-CV, 2012 Tex. App. LEXIS 10274, at **1-10 (Tex. App.—Beaumont, Dec. 13, 2012, pet. denied). Furthermore, Chapter 841's requirement that the defendant must be a "repeat sexually violent offender" is not jurisdictional. *See In re Commitment of Hall*, No. 09-09-00387-CV, 2010 Tex. App. LEXIS 8096, at **2-4 (Tex. App.—Beaumont Oct. 7, 2010, no pet.).

Whether or not the expert who performs the "clinical assessment" finds that the inmate has a behavioral abnormality, the expert's finding from the clinical assessment is not a jurisdictional issue. The plain language of the statute states that "[t]o aid in the assessment, the department . . . shall use an expert to examine the person[,]" and "[t]he expert shall make a clinical assessment . . . to aid the department in its assessment." Tex. Health & Safety Code Ann. § 841.023(a) (West Supp. 2013). The plain language of the statute does not specifically mandate that the "clinical assessment" must conclude that the person has a behavioral abnormality before the State may proceed with the civil commitment. Accordingly, the text does not indicate that the Legislature intended for the provision to be jurisdictional.

Section 841.022 of the Texas Health and Safety Code provides that the executive director of the TDCJ and the commissioner of the Department of State Health Services shall establish a multidisciplinary team ("MDT") to review available records of a person referred to the MDT. *See* Tex. Health & Safety Code Ann. § 841.022 (West Supp. 2013). The MDT "may request the assistance of other persons in making an assessment under this section." *Id.* § 841.022(b).

Under section 841.023, after the MDT has made a recommendation under section 841.022(c), the TDCJ or the Department of State Health Services shall make an assessment. *See id.* § 841.023 (West Supp. 2013).

> (a) Not later than the 60th day after the date of a recommendation under Section 841.022(c), the Texas Department of Criminal Justice or the Department of State Health Services, as appropriate, shall assess whether the person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. **To aid in the assessment**, the department required to make **the assessment** shall use an expert to examine the person. That department may contract for the expert services required by this subsection. The expert shall make **a clinical assessment** based on testing for psychopathy, a clinical interview, and other appropriate assessments and techniques **to aid the department in its assessment**.
>
> (b) If as a result of **the assessment** the Texas Department of Criminal Justice or the Department of State Health Services believes that the person suffers from a behavioral abnormality, the department making **the assessment** shall give notice of that assessment and provide corresponding documentation to the attorney representing the state not later than the 60th day after the date of a recommendation under Section 841.022(c).

*Id.* § 841.023 (emphasis added). If a person is referred under section 841.023 to the State's attorney, "the attorney may file . . . a petition alleging that the person is a sexually violent predator and stating facts sufficient to support the allegation." *Id.* § 841.041(a) (West 2010).

7

In this case, the MDT found that Alvarado is a repeat sexually violent offender, and he is likely to commit a sexually violent offense after his release. Under section 841.022(c), the MDT then recommended that Alvarado be assessed by TDCJ to see whether he has a behavioral abnormality. Dr. Christine Reed, who performed the "clinical assessment" for TDCJ, issued a report stating that Alvarado does not suffer from a behavioral abnormality. She noted in her report that while Alvarado admitted to some participation in the sexual assaults, "he described his participation as minimal and he continued to primarily blame the girls' stepmother for the abuse." Dr. Reed reserved the right to make adjustments or changes to her diagnoses and opinions "in the event that new information be[came] available that warrant[ed] such changes."

The TDCJ disagreed with Dr. Reed's evaluation, and a Rehabilitation Programs Division Manager for the TDCJ sent the Special Prosecution Unit Chief Attorney a letter stating as follows:

> On February 12, 2012, TDCJ gave notice to the multidisciplinary team (MDT) of the anticipated release of Alvarado, Luis . . . . The MDT determined that the offender is a repeat sexually violent offender and is likely to commit a sexually violent offense after release or discharge, gave notice of that determination to TDCJ, and recommended the assessment of the person for a behavioral abnormality.

> On March 5, 2012, Dr. Christine Reed evaluated the offender and concluded that the offender does not meet the statutory requirement of behavioral abnormality . . . . However, I am referring this case for civil commitment following extensive evaluation.
>
> Therefore, pursuant to Texas Health & Safety Code Section 841.023(b), the [TDCJ] has determined that Alvarado, Luis suffers from a behavioral abnormality that predisposes him to commit a sexually violent offense. This document serves as official notice of that fact.

The TDCJ stated that it agreed with the MDT's determination that Alvarado is a repeat sexually violent offender, and he is likely to commit a sexually violent offense after his release.

Before the State files an SVP civil commitment petition, the TDCJ must administratively determine that the inmate is a sexually violent predator. *In re Commitment of Bohannan*, 388 S.W.3d 296, 298 (Tex. 2012), *cert. denied*, 133 S.Ct. 2746 (2013). The SVP statute "requires that determination to be informed by an expert's 'clinical assessment. . . .'" *Id*. "Once suit is filed, the Act gives both the State and the person the right to a further expert examination." *Id*.

Section 841.022 does not require the MDT to include an evaluation by an expert, but the MDT may request assistance of other persons in making its recommendation. *See* Tex. Health & Safety Code Ann. § 841.022(b), (c)(1). If the MDT concludes that the person should be assessed for a behavioral abnormality,

9

the MDT shall give notice to the TDCJ. *See id.* § 841.022(c). The TDCJ shall then make its assessment:

> **To aid in the assessment,** the department required to make **the assessment** shall use an expert to examine the person. That department may contract for the expert services required by this subsection. The expert shall make a **clinical assessment** based on testing for psychopathy, a **clinical** interview, and other appropriate **assessments** and techniques **to aid the department in its assessment**.

§841.023(a) (emphasis added).

As expressly set forth in the statute, the TDCJ or the Department of State Health Services makes "the assessment" or "its assessment" of the person. *See id.* The expert's "clinical assessment" is to aid the department in "its assessment" and determination. There is no language in the statute that indicates the legislature intended for the expert's "clinical assessment" to be a jurisdictional requirement before suit can be filed. Furthermore, there is no indication in the plain wording of the statute that the legislature intended to require the department to obtain an expert's clinical finding of a behavioral abnormality before the department may give notice to the State's attorney of the department's assessment that the person has a behavioral abnormality. Additionally, there is no indication in the plain wording of the statute that the legislature intended to preclude the department from reaching a determination that is contrary to the expert's clinical assessment. Rather, the plain wording of the statute indicates that the legislature intended the

10

"clinical assessment" to act merely as an "aid" in the department's overall assessment and recommendation.

Unlike the Texas SVP statute, the California SVP statute specifically includes language requiring two experts to find the individual is a sexually violent predator before the civil suit can proceed. *See, e.g*., Cal. Welf. & Inst. Code § 6601. As noted by the Texas Supreme Court, the Texas "Act requires [the department's assessment] *to be informed by* an expert's 'clinical assessment based on testing for psychopathy, a clinical interview, and other appropriate assessments and techniques.'" *In re Commitment of Bohannan*, 388 S.W.3d at 298 (emphasis added). The Texas Legislature did not state that, prior to the State's proceeding with the commitment, the "clinical assessment" performed during the administrative phase must conclude that the defendant suffers from a behavioral abnormality, nor did the legislature expressly require the department to base "its assessment" solely upon the result of the clinical assessment.

In *Beasley v. Molett,* 95 S.W.3d 590, 598 (Tex. App.—Beaumont 2002, pet. denied), this Court previously noted that the requirement of competent expert testimony to support an involuntary commitment under the SVP statute may be met through examination by an expert under section 841.023, ***and also through post-petition examination by an expert prior to trial under section 841.061.*** Our

11

decision today is consistent with *Beasley*. The record indicates that competent post-petition experts concluded that Alvarado suffers from a behavioral abnormality.

We conclude that the plain meaning of the provision in question is that the expert's "clinical assessment" is merely to "aid" the department in making the department's "assessment," and during the administrative stage of the proceeding the failure of the expert to find that Alvarado does not have a behavioral abnormality does not preclude the State from proceeding with a civil commitment if the department concludes the defendant does suffer from a behavioral abnormality. *See* Tex. Health & Safety Code Ann. § 841.023; *see also id.* §§ 841.041, 841.061 (West 2010). Furthermore, we reject Alvarado's argument that the TDCJ could not provide the State's attorney with the "corresponding documentation" required by section 841.023(b) once the expert in the "clinical assessment" found that Alvarado does not have a behavioral abnormality.

Dr. Dunham, a forensic psychologist and one of the State's experts, explained at trial that the expert performing the initial clinical assessment required by the statute often has "pretty limited" documentation on which to rely in determining whether the person has a behavioral abnormality, and that additional documentation may only be available subsequent to the initial clinical assessment.

Section 841.023 states that if the *department* believes that the person suffers from a behavioral abnormality, the *department making the assessment* shall give notice *of that assessment* and provide "corresponding documentation" to the State's attorney. *Id.* § 841.023(b) (emphasis added).

The phrase "corresponding documentation" found in § 841.023(b) is not limited to documentation that corresponds solely to the "clinical assessment." This language must be read within the context of the remainder of section 841.023. As explained above, the plain meaning of section 841.023 does not require the department to base its "assessment" solely on the expert's "clinical assessment[.]" Furthermore, the plain meaning of the phrase "corresponding documentation" is not tied to the "clinical assessment." The phrase "corresponding documentation" expressly follows the phrase "the department making the assessment shall give notice of that assessment and provide corresponding documentation to the attorney representing the State." "[C]orresponding documentation" therefore relates to the department's assessment and not the "clinical assessment." Moreover, for the same reasons outlined above, we reject Alvarado's argument that section 841.041(a)'s requirement -- that the petition state "facts sufficient to support the allegation" that the person "is a sexually violent predator" -- can only be met when the initial

13

"clinical assessment" concludes the person has a behavioral abnormality. Issue one is overruled.

## SUFFICIENCY CHALLENGES

In his second and third issues, Alvarado argues the evidence is legally and factually insufficient to support the jury's finding that Alvarado has a condition that makes him likely to engage in a predatory act of sexual violence. Alvarado maintains that he has had no sexual misconduct apart from his past offenses and "that any heightened risk [he] might have of committing more sexual offenses is restricted exclusively to family members inside the home." He claims that, upon his release, his interaction with his other two daughters would be regulated by the sex offender registration requirements. Alvarado contends he should be awarded a new trial because the risk is so great that "the jury's verdict is based on pure speculation that appellant committed and would 'likely' commit sexual offenses against stranger and non-stranger victims outside the family[.]"

To prevail on his legal sufficiency issue, Alvarado is required to demonstrate that no evidence supports the jury's finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983); *Christus St. Mary Hosp. v. O'Banion*, 227 S.W.3d 868, 873 (Tex. App.—Beaumont 2007, pet. denied). Under the SVP statute, the State must prove, beyond a reasonable doubt, that "the person is a sexually violent

14

predator." Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). "[T]he burden of proof at trial necessarily affects appellate review of the evidence." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Because the SVP statute employs a beyond-a-reasonable-doubt burden of proof, when we review the legal sufficiency of the evidence, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier-of-fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied).

The standard that applies to reviewing a factual sufficiency challenge in SVP cases requires the Court to weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day,* 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied). "[I]f in the view of the appellate court after weighing the evidence, the risk of an injustice remains too great to allow the verdict to stand, the appellate court may grant the defendant a new trial." *Id.*

Alvarado testified that J.A. and L.A. fabricated the "majority" of the sexual offenses for which Alvarado was charged. He admitted to the abuse and testified that his wife (J.A.'s and L.A.'s stepmother) also participated in the abuse.

15

Alvarado further testified he does not believe he needs sex offender treatment. The only sex offender treatment he ever received was a class in 1996 required by Child Protective Services.

Dr. Dunham testified that Alvarado has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dunham's methodology involved an interview of Alvarado and an analysis and review of the records, including police reports, legal documents, victim statements, witness statements, prison records, expert depositions, and Alvarado's medical records.

Dr. Dunham diagnosed Alvarado with "pedophilia, sexually attracted to females, nonexclusive type[,]" sexual sadism, alcohol abuse by history, and personality disorder not otherwise specified with antisocial and narcissistic features. According to Dunham, pedophilia, sexual sadism, and personality disorders are "chronic and lifelong" and "not treatable through counseling." Dunham explained that "this is one of the most severe cases I've ever seen against children" and agreed that Alvarado's offenses against his family are more severe than a typical offender who offends against his own family. Dunham testified that according to the records he reviewed, Alvarado not only sexually and physically abused J.A. and L.A., but he also prostituted them to men for money and made them watch pornography.

16

Dr. Dunham identified Alvarado's risk factors for reoffending as follows: he assaulted his children three to five times a week for up to five years; he planned the assaults; he was not deterred by the risk of getting caught even though others were present during the assaults; his victims were ages seven to twelve years old at the time of the assaults; there were many different sexual acts and deviancies involved in the case; he offended against his daughters while he was married; he had a preoccupation with sex; there was a level of intimidation over his victims; there was a high level of physical violence (including threats to kill, tying up his victims, and using implements such as a screwdriver or other objects) in the commission of the sexual assaults; there was a consistent pattern of sexual abuse over a lengthy period of time; and there was an escalation of violence in sexual offenses over time. Other facts of consequence to Dunham included Alvarado's personality disorder, his history of alcohol abuse, his belief that it is feasible for him to become a TDCJ correctional officer or live with his ten or eleven year old daughter from a subsequent marriage, his lack of empathy and remorse towards his victims, his statements blaming others for his offenses, his failure to take responsibility and his perception of himself as a victim, his poor appraisal of his own risk, his failure to consider himself a sex offender or to agree he needs any sex offender treatment, and his denial that he has pedophilia and sexual arousal to children. Dr. Dunham

17

testified that Alvarado's testimony and his history reflect that Alvarado has an ingrained belief he is entitled to have sex with his own children.

Dr. Dunham scored the Static-99R and the Psychopathy Checklist Revised on Alvarado. Although Alvarado's score on the Static-99R indicated a low risk for reoffending with a sexual offense, Dunham believed the score to be inaccurate because it does not measure many factors that elevate one's risk of reoffending. On the Psychopathy Checklist Revised, Alvarado's score placed him within a high range level of psychopathy. According to Dunham, Alvarado's good behavior and lack of sexual misconduct while incarcerated does not decrease or increase his risk of sexual reoffending. Dunham testified that in predicting Alvarado's future behavior it is important to look at Alvarado's past behavior.

Dr. Lisa Clayton, a forensic psychiatrist, also testified for the State. Dr. Clayton used a methodology similar to that of Dunham. She concluded that Alvarado suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Clayton diagnosed Alvarado with pedophilia, adult antisocial behavior, and alcohol abuse by history. She identified similar risk factors for Alvarado's reoffending. She also explained that pedophilia is a chronic condition and that the innate sexual desire of a pedophile cannot be controlled.

18

Dr. Clayton was concerned that Alvarado laughed when he talked to her about the sexual assault with the screwdriver on L.A. Clayton was also concerned because Alvarado told her he had plans after his release to live with his current wife and young children. Clayton also testified that in 2010, when L.A. (one of Alvarado's victims) was an adult, L.A. wrote a letter to the parole board "begging them not to let him out[.]"

Dr. Marisa Mauro, a forensic psychologist and licensed sex offender treatment provider, testified for the defense. Mauro conducted an interview of Alvarado, employed actuarial instruments, and reviewed records to aid in determining whether Alvarado suffers from a behavioral abnormality. Mauro does not believe Alvarado suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. She testified that Alvarado indicated that his wife at the time of the offenses was abusing him, J.A., and L.A., and that his wife would force him to offend against J.A. and L.A. Mauro provisionally diagnosed Alvarado with pedophilia because it was hard to determine whether his acts were "geared for" sexual behavior or for abusive acts. According to Mauro, although Alvarado has engaged in sexually deviant acts, he is not "sexually deviant today." Mauro testified that Alvarado has antisocial and narcissistic traits. She stated her belief that Alvarado may have offended against

19

the girls because of an abnormal reaction to the death of one of his other children. Mauro further stated she does not think it is necessary for Alvarado to have sex offender treatment.

Mauro administered the Static-99R, the Static-2002R, and the Hare PCL-R on Alvarado. After scoring the Hare PCL-R, Mauro did not consider Alvarado to be a psychopath. After scoring the Static-99R actuarial, Mauro testified she believed Alvarado fell into the "low risk" category for sexually reoffending.

The jury also heard evidence of Alvarado's plans upon release. Alvarado contends that the trial court should not have considered evidence regarding his plan to live with his wife and other young children because such evidence would be irrelevant under *In re Commitment of Smith*, No. 09-12-00189-CV, 2013 Tex. App. LEXIS 1095, at \*\*19-20 (Tex. App.—Beaumont Feb. 7, 2013, pet. denied). He claims the trial court erred in admitting such evidence. The State's experts considered Alvarado's future plans to live with his children to be a fact that should be considered when evaluating his risk of sexually reoffending. Alvarado did not object to the State's experts' testimony regarding his future plans and Alvarado himself testified to those plans at trial. Accordingly, he waived this argument. *See* Tex. R. App. P. 33.1(a).

After hearing evidence from the expert witnesses and from Alvarado, a jury could reasonably have determined that Alvarado is likely to engage in a predatory act of sexual violence. *See In re Commitment of Mullens*, 92 S.W.3d at 887. The jury was entitled to draw reasonable inferences from basic facts to determine ultimate fact issues, and to resolve conflicts and contradictions in the evidence by believing all, part, or none of a witness's testimony. *See id.* The jury could reasonably have accepted Dunham's and Clayton's testimony and rejected Mauro's testimony. Alvarado's difficulty in controlling his behavior can be inferred from his past behavior, his own testimony, and the testimony of the State's experts. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *13 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.); *In re Commitment of Wilson*, No. 09-08-00043-CV, 2009 Tex. App. LEXIS 6714, at *14 (Tex. App.—Beaumont Aug. 27, 2009, no pet.) (mem. op.).

Considering all the evidence in the light most favorable to the verdict, we conclude in our legal sufficiency review that the jury could reasonably find beyond a reasonable doubt that Alvarado has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *In re Commitment of Day,* 342 S.W.3d at 213. As to the factual sufficiency challenge, we conclude the record does not reflect a risk of injustice that compels granting a new trial. We overrule

21

issues two and three, because the evidence is legally and factually sufficient to support the jury's verdict.

We review a trial court's decision concerning the admissibility of evidence for an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts arbitrarily and unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We will reverse a judgment if an error by the trial court probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *See* Tex. R. App. P. 44.1(a).

Alvarado contends in his fourth issue that the trial court erred in admitting into evidence the graphic details of the offenses (charged and uncharged) for the limited purpose of explaining the basis of the expert opinions, because "any probative value of this evidence was substantially outweighed by the danger of confusion and unfair prejudice." The State's experts testified about the details associated with Alvarado's sexual offenses against J.A. and L.A. Clayton and Dunham explained to the jury how and why the underlying offenses and factual information assisted them in evaluating Alvarado and in determining whether he

22

has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The trial court overruled Alvarado's objections and determined that the testimony should be admitted as evidence showing the basis of the experts' respective opinions. *See* Tex. R. Evid. 703, 705.

Under Rule 705(a) of the Texas Rules of Evidence, an expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data, and may discuss the defendant's prior offenses as part of the basis of the expert's opinion. *See, e.g., In re Commitment of Camarillo*, No. 09-12-00304-CV, 2013 Tex. App. LEXIS 7212, at \*\*9-10 (Tex. App.—Beaumont June 13, 2013, no pet.) (mem. op.); *In re Commitment of Polk*, 187 S.W.3d 550, 555 (Tex. App.—Beaumont 2006, no pet.). Alvarado argues that the admission of the evidence was more prejudicial than probative and that the State did not need the evidence because the experts presented extensive "non-detail" evidence setting out the basis of their opinions. He further contends that the State, during its closing argument, emphasized the details of the offenses for their truth and went beyond the limited purpose for which the offenses were admitted, which nullified the trial court's limiting instruction.

Trial courts have discretion to admit the underlying facts or data on which an expert has based an opinion. *See* Tex. R. Evid. 705(a); *Boswell v. Brazos Elec.*

23

*Power Coop., Inc.*, 910 S.W.2d 593, 602 (Tex. App.—Fort Worth 1995, writ denied). Rule 705(d) provides:

> When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

Tex. R. Evid. 705(d). In this matter, the trial judge gave the following limiting instruction during the trial and included a similar instruction in the jury charge:

> Hearsay normally is not admissible. However, certain hearsay information contained in records reviewed by experts is allowed into evidence through the expert's testimony. Such evidence is admitted only for the purpose of showing the basis of the expert's opinion.

At no time during the trial did Alvarado object to the trial court's limiting instructions. Although he did request a different limiting instruction in a pre-trial motion, the pre-trial motion or pre-trial request failed to preserve the point. *See* Tex. R. App. P. 33.1(a). To the extent Alvarado argues the limiting instruction given by the trial court could not have mitigated the prejudicial effects of the "basis" evidence, we presume the jury followed the trial court's limiting instructions. *In re Commitment of Day*, 342 S.W.3d at 199.

24

We further overrule Alvarado's argument that the trial court erred because "[t]he State did not have much of a need for the details evidence . . . because there is plenty of other not-so-inflammatory evidence that the jury could have used" in weighing the testimony and expert opinions. Under Rules 703 and 705, the underlying facts or data upon which the expert bases his opinion, if of a type reasonably relied on by experts in the field in forming opinions on the subject, may be disclosed at trial. The State's experts identified many risk factors for Alvarado to reoffend with a sexually violent offense, and the experts' explanation of the factors required information about the details surrounding the offenses. The State therefore could establish a need for the basis evidence, and any tendency of the jury to give undue weight to the evidence was mitigated by the limiting instructions.

The trial court could have reasonably concluded that the evidence at issue would be helpful to the jury to explain how the State's experts formed their opinions regarding Alvarado's behavioral abnormality. Furthermore, we conclude the trial court's limiting instruction to the jury was sufficient. *See* Tex. R. Evid. 705(d); *In re Commitment of Ford*, No. 09-11-00425-CV, 2012 Tex. App. LEXIS 2221, at **4-5 (Tex. App.—Beaumont Mar. 22, 2012, no pet.) (mem. op.); *In re Commitment of Day*, 342 S.W.3d at 199. Accordingly, the trial court did not err in

25

overruling Alvarado's objections and admitting this evidence, and in light of the evidence and facts, the rulings probably did not cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). We overrule issue four.

## MOTION TO STRIKE

In his fifth issue, Alvarado argues the trial court erred in denying Alvarado's motion to strike Dr. Dunham's expert testimony. Alvarado contends that Dunham was unaware of this Court's decision in *Almaguer*[1] and Dunham did not understand that the definition of "behavioral abnormality" required a finding that the individual has serious difficulty in controlling his behavior.

At trial, Dr. Dunham described the legal definition of behavioral abnormality as "a congenital or acquired condition that affects a person's emotional or volitional capacity such that it predisposes them to commit a predatory act of sexual violence to the point that they become a menace to the health and safety of others." Dunham testified as follows:

---

[1] In *In re Commitment of Almaguer*, our Court noted that another appellate court stated that "[a] finding that a person suffers from an emotional or volitional defect so grave as to predispose him to threaten the health and safety of others with acts of sexual violence entails a determination that he has 'serious difficulty in controlling behavior.'" 117 S.W.3d 500, 505 (Tex. App.—Beaumont 2003, pet. denied) (quoting *In re Commitment of Browning*, 113 S.W.3d 851, 863 (Tex. App.—Austin 2003, pet. denied)).

26

[State's Counsel]: Using the definition for behavioral abnormality as found in the Health & Safety Code, as a congenital or acquired condition, that by affecting a person's emotional or volitional capacity, predisposes them to commit predatory acts of sexual violence, does Mr. Alvarado have a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence?

. . . .

[Dr. Dunham]: Yes, I believe he does.

The Texas Supreme Court in *In re Commitment of Bohannan* explained that "condition and predisposition are one and the same[,]" and "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." 388 S.W.3d at 302-03. Moreover, "*Bohannan* did not eliminate any proof required by the statute . . . or render it unconstitutional." *In re Commitment of Anderson*, 392 S.W.3d 878, 885 (Tex. App.—Beaumont 2013, pet. denied). Dr. Dunham used the statutory definition of behavioral abnormality in reaching his opinion. The trial court did not err in overruling Alvarado's motion to strike Dunham's testimony. We overrule issue five.

ADMISSION OF TESTIMONY REGARDING LETTERS TO THE PAROLE BOARD

In issue six, Alvarado complains that the trial court erred in allowing Dr. Clayton to testify about the statements in J.A.'s and L.A.'s letters to the parole board. As explained above, an expert may disclose the underlying facts or data

27

upon which she relies in making an opinion. Tex. R. Evid. 705(a). Alvarado argues that the letters were irrelevant and prejudicial, and that it is not apparent that Clayton relied on the letters.

Dr. Clayton testified about Alvarado's risk factors and Alvarado's dangerous combination of psychopathic traits and pedophilia. She explained that people with that dangerous combination lack guilt or remorse for their actions. Immediately thereafter, Dr. Clayton testified that J.A.'s and L.A.'s letters to the parole board demonstrated the fear that Alvarado instilled in his victims, even many years after the offenses. In explaining the basis of her opinion, Clayton referenced the content of the letters as part of the basis of her opinions. We conclude the trial court did not err in admitting the testimony regarding the letters. The trial court gave a limiting instruction during the experts' testimony and during the jury charge regarding the purposes for which the jury could consider the underlying facts or data relied on by the experts. Even if the letters were irrelevant, we presume the jury followed the trial court's limiting instruction. *In re Commitment of Day*, 342 S.W.3d at 199. Issue six is overruled.

PARTIAL DIRECTED VERDICT

Alvarado argues in his seventh and final issue that the trial court erred in granting a directed verdict on the repeat sexually-violent-offender element. In *In re*

28

*Commitment of Martinez*, this Court held that an appellant is not entitled to have the jury determine the issue of whether he is a repeat sexually violent offender (and a trial court does not err in granting a partial directed verdict in favor of the State on the repeat sexually-violent-offender element), because there is no fact question for the jury to decide on the issue when the evidence conclusively establishes the existence of appellant's prior convictions for more than one sexually violent offense. *See In re Commitment of Martinez*, No. 09-12-00452-CV, 2013 Tex. App. LEXIS 13512, at **10-12 (Tex. App.—Beaumont Oct. 31, 2013, no pet.) (mem. op.) (citing *In re Commitment of Scott*, No. 09-11-00555-CV, 2012 Tex. App. LEXIS 8866 (Tex. App.—Beaumont Oct. 25, 2012, no pet.) (mem. op.)). The evidence conclusively established Alvarado's prior convictions for more than one sexually violent offense. The trial court did not err in granting the partial directed verdict. We overrule issue seven.

The trial court's judgment is affirmed.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on December 13, 2013
Opinion Delivered March 27, 2014
Before McKeithen, C.J., Horton and Johnson, JJ.