In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00304-CV
_____


IN RE COMMITMENT OF TIMOTHY RAY RAMSEY

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 14-01-00379 CV

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Timothy Ray Ramsey (Ramsey) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (SVP Statute). A jury found that Ramsey is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Ramsey filed an appeal.

In his first appellate issue, Ramsey argues the trial court erred in denying Ramsey's request that his expert evaluation be videotaped. In issues two and three, Ramsey challenges the legal and factual sufficiency of the evidence supporting the jury's finding that he has serious difficulty controlling his behavior. In his fourth

1

issue, Ramsey contends he was "unduly prejudice[ed]" by Dr. Clayton's testimony because Dr. Clayton relied on "hearsay evidence[.]" In his fifth and final issue, Ramsey argues the trial court erred in limiting his attorney's cross-examination of Dr. Clayton. We affirm the trial court's judgment.

## THE EVIDENCE

The jury heard Ramsey's admissions to the State's requests for admissions wherein Ramsey admitted to being convicted of touching a child for lustful purposes in Mississippi in 1995, to being convicted of indecency with a child in 2003, and to being convicted for failure to comply with sex offender registration in 2003. He admitted that he received a ten-year sentence for his conviction for touching a child for lustful purposes (with one year to be served in prison and nine suspended), that he received a fifteen-year sentence for the conviction for indecency with a child, and that he received a ten-year sentence for the conviction for failure to comply with sex offender registration. Ramsey admitted that one of his victims was a six-year-old girl and that the other victim was a six- or seven-year-old child. Ramsey also admitted that he has a problem with alcohol, that he has not completed the Sex Offender Treatment Program, that he has received major disciplinaries while in prison, that he believes he is a sex offender, and that he has fantasized about his victims.

2

At trial, Ramsey testified that his stepfather sexually abused him from age eight to eighteen. Ramsey explained that as to his conviction for touching a child with lustful purposes, he offended against the six-year-old child over a two-and-a-half-year period. Ramsey stated that he was like "a warring lion after a piece of meat, is like you got to have it. If I don't have it, I want - - I'm hungry, you know. . . . It's like an addiction, a drug addiction. . . .[I]f I didn't get it, I'd do anything to get it[.]" He testified that before he went to prison for the 1995 conviction, he shot himself in the head after his uncle died and "[m]y conscience was eating at me. Why? Because I told myself, I would never do this to a child because I was done the same way, but what I did, I did."

Ramsey stated that after he served the one year in prison in Mississippi, he was released, and, as a requirement of moving to Texas, he participated in a Sex Offender Treatment Program (SOTP) in Texas. According to Ramsey he did not learn "that much" because he "only did . . . about four weeks" in that program. About seven years later, Ramsey offended against a six year old child in his neighborhood. Ramsey testified that after he offended against that child he gave her ice cream and told her that "she needs to tell her mother about what happened because this will not happen again and I guarantee it, because I will be in prison at the time." He testified he received a fifteen-year sentence for that offense and a ten-year sentence for failing to register as a sex offender.

According to Ramsey, his disciplinaries while incarcerated included tampering with a locking mechanism, threatening an officer, possession of contraband, slicing his wrists with a razor blade, spitting in an officer's face, and assaulting an officer. Ramsey was sent to the Persistently Aggressive Mentally Ill Offenders Program (PAMIO), where he received a disciplinary for getting into a fight while in the program. Ramsey explained that he completed the Sex Offender Education Program (SOEP) because he was told to complete it as part of his parole plan and if "[he] didn't do it, [he] wouldn't get [his] parole." At the time of trial, Ramsey was on parole. Ramsey admitted that he has "a problem[,]" that he told a doctor the year before the trial that he is sexually attracted to children, and that he "probably will" reoffend. He explained the "[b]ottom line . . . I can't be around children[,]" and he said that if he found himself in a situation, like at a mall, where children were around and he could not "figure out a way to go, then I'm in trouble." He testified that if he is going to the mall, for example, in order for him to control himself he would not use the main entrance where children usually are, but would instead use a side-entrance "where it's no traffic and . . . there's no children."

Dr. Lisa Clayton, a medical doctor specializing in psychiatry, with a subspecialty in forensic psychiatry, testified for the State. Dr. Clayton is board-certified in general and forensic psychiatry. Based on her training, her experience,

the records she reviewed, and her interview with Ramsey, Dr. Clayton testified she believes Ramsey suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Clayton explained her methodology for assessing a behavioral abnormality, which she testified is consistent with the accepted standards in her field. She testified that the records she reviewed and relied upon in making her assessment are the type of records typically used by experts who do this type of evaluation.

Dr. Clayton diagnosed Ramsey with pedophilic disorder, antisocial personality disorder, and alcohol disorder. She explained that pedophilic disorder is a chronic condition that involves primitive urges that are "lifelong[.]" According to Dr. Clayton, Ramsey abused both of the victims many more times than the instances for which he was convicted.

Dr. Clayton acknowledged that Ramsey became tearful during his testimony at trial, but she questioned his genuineness because, according to Clayton, Ramsey did not exhibit remorse when he discussed the offenses with her. Dr. Clayton further testified that

> [Ramsey] has a severe sexual deviancy and pedophilia, as he described it, a hunger, that he can't control. He even said an addiction at one point, that -- but I think the hunger that he can't control, that he'd do anything to get it, is true about the way he feels about children.
> I think his attempts -- yes, he doesn't need to be around children. . . . But I think, when he . . . is out in the community for any length of time . . . there's going to be the stimulation, and he's going

to be -- whether it's conscious or even subconsciously drawn towards -- as he said, he's thinking about going to the mall. Well, he can't go to a mall. . . . [D]ue to his pedophilia . . . he's got to plan about how he's going to avoid children. But just by being in the mall, he's going to be around children, no matter which entrance he goes into.

So . . . if it's genuine, it's very limited and it's not enough. And, yes, despite . . . being sorry and saying he's hurt the children, that was the first time I ever heard him or saw him . . . have what I would consider empathy for the victim, at the end of his testimony today. But I just don't think it's enough. . . . he's severely sexually deviant and by his own admission, still has those urges and has difficulty controlling himself with those urges.

Dr. Clayton also explained that, as a result of Ramsey shooting himself in the head, Ramsey suffers from what Clayton considers "mild neurocognitive disorder due to traumatic brain injury[,]" and that Ramsey is "less likely to . . . sit and process things and more likely to act on it." As to Ramsey's alcohol disorder, Dr. Clayton testified that alcohol is a disinhibitor and leads to a higher incidence of reoffending. She acknowledged that Ramsey had participated in a Sex Offender Educational Program, which is a therapy treatment where offenders "sit[] in a room, listen[] to someone lecture and teach him about these concepts[.]" But, Dr. Clayton explained that in her opinion "it doesn't begin to let him apply those . . . and be in a therapeutic-type environment[.]" Dr. Clayton agreed that Ramsey testified that when he came to Texas he had treatment for four weeks, but Dr. Clayton stated that the four weeks of treatment "doesn't count" because, as Ramsey admitted, he quit attending. According to Dr. Clayton, when she met with Ramsey "he threw out some catch phrases" he had learned in the sex offender

6

education program he attended while incarcerated, but when she asked him to explain how the concepts relate to him, Dr. Clayton did not think he had "incorporated it" and she did not "expect him to."

Dr. Clayton reviewed the Static-99R actuarial test administered by Dr. Dunham and another SOTP evaluator. She admitted that Ramsey's score indicated a low risk for reoffending. But, Dr. Dunham noted in his report that he believed that the score grossly underestimates Ramsey's true level of risk because it doesn't consider all offenses, the long period over which Ramsey offended and multiple times, and his abuse of alcohol. Dr. Clayton testified that she agreed with Dunham's opinion that the actuarial score did not accurately indicate Ramsey's risk for reoffending.

Dr. Clayton identified the following factors that indicate that Ramsey has a high risk for recidivism: that he has the sexual deviancy of pedophilia, that he offended against an acquaintance, that he has antisocial personality disorder, that he has offended after he has been incarcerated or been punished for his offenses, that he has offended when he was in age-appropriate relationships, that he has a history of offending even after he had four weeks of treatment, that he has a history of violent behavior toward others since he has been incarcerated, that he has alcohol dependence, that he is in overall good health, and that he is only forty-five

years old. Dr. Clayton testified that she could not identify any positive factors for Ramsey.

Ramsey did not call any witnesses to testify on his behalf. A jury found that Ramsey is a sexually violent predator. The trial court rendered a final judgment and an order of civil commitment, and Ramsey appealed.

## RIGHT TO VIDEOTAPED EXPERT EVALUATION

In his first issue, Ramsey argues the trial court violated Ramsey's statutory and constitutional right to cross-examine witnesses when the trial court denied Ramsey's request to videotape his evaluation by Dr. Clayton. Ramsey "urges this Court to find that the statutory right to cross-examination is best preserved in civil commitment cases when all mental examinations are videotaped[]" or, in the alternative, "asks this Court to require the trial court to make a case-by-case assessment as to whether due process and the interest of justice require an individual defendant's mental examination to be videotaped." Ramsey contends that whether to allow examinations to be videotaped should "at least [] be determined on a case-by-case basis[,]" and that under the test set out in *Mathews v. Eldridge*[1] regarding the amount of due process to be afforded in a proceeding, he should have been allowed to have his mental examination videotaped.

---

[1] *Mathews v. Eldridge*, 424 U.S. 319 (1976). Determining what process is due in a particular proceeding requires consideration of three factors: (1) the private interest affected by the proceeding or official action; (2) the countervailing

8

Ramsey argues that *In re Commitment of Smith*, 422 S.W.3d 802 (Tex. App.—Beaumont 2013, pet. denied), supports his argument. In *Smith*, we held that neither the SVP statute nor the Fourteenth Amendment require that counsel be present during a psychiatrist's post-petition civil commitment examination. 422 S.W.3d at 807. Ramsey argues that our holding in *Smith* "hinged on the fact" that the appellant in Smith could not explain why his counsel could not adequately advise him and protect his rights without being physically present during the examination. According to Ramsey, "[t]his Court indicated that a case-by-case basis could therefore be applied when it analyzed whether the appellant in *Smith* had shown that particularized need." Ramsey asserts that if he had been able to videotape the mental evaluation his attorney could have cross-examined Dr. Clayton about the examination so the jury could weigh her testimony and credibility "against her own previous words[,]" and the jury would have been able to see whether Ramsey had the opportunity to express regret over his actions during the evaluation. Ramsey contends he was harmed by not having the examination videotaped because his attorney could not impeach Dr. Clayton in regards to her testimony about what happened at the mental examination, and the jury could not assess the methods Dr. Clayton employed during the evaluation and

---

governmental interest supporting use of the challenged proceeding; and (3) the risk of an erroneous deprivation of that interest due to the procedure used. *Id.* at 335.

9

could not determine whether Dr. Clayton was objective, whether she asked leading questions, or whether she employed acceptable evaluation methods.

First, we must determine whether Ramsey has a statutory right to have his mental examination videotaped. Section 841.061 outlines the rights of a person on trial for civil commitment under Chapter 841. *See* Tex. Health & Safety Code Ann. § 841.061 (West 2010). Section 841.061(b) provides that the person or the State is entitled to a jury trial on demand, and section 841.061(c) provides that the person and the State are each entitled to an immediate examination of the person by an expert. *Id.* § 841.061(b), (c). Section 841.061(d) provides that at trial the person has the following additional rights:

> (1) the right to appear at the trial;
> (2) except as provided by Section (f), the right to present evidence on the person's behalf;
> (3) the right to cross-examine a witness who testifies against the person; and
> (4) the right to view and copy all petitions and reports in the court file.

*See id.* § 841.061(d). "A person who is on trial to determine the person's status as a sexually violent predator is required to submit to all expert examinations that are required or permitted of the state to prepare for the person's trial." *Id.* § 841.061(f). After reviewing the plain language of the statute, we conclude that the SVP statute does not expressly grant Ramsey the right to a videotaped mental evaluation.

Second, we examine Ramsey's claims that section 841.061(d)(3), which sets out his right to cross-examine witnesses, encompasses "the ability to probe into

what happened at the mental examination." Ramsey claims that by denying him the right to a videotaped mental examination, the trial court effectively rendered Ramsey's right to cross-examine Dr. Clayton "an empty right[.]" The right to cross-examine witnesses as set forth in section 841.061(d)(3) states that it grants the person subject to commitment the right to cross-examine a witness who testifies against the person. Again, there is nothing in the statute that expressly grants the right to videotape the examination of Ramsey. We conclude that Ramsey's statutory right to cross-examine witnesses does not include the right to videotape the psychiatric examination. Furthermore, we reject Ramsey's argument that without the right to videotape the examination, his right to cross-examine Dr. Clayton is "an empty right." Ramsey had the right to cross-examine Dr. Clayton at trial and also had other methods of exploring the expert's testimony before trial. For example, Ramsey could have taken the deposition of Clayton before trial.

Finally, we address Ramsey's argument that, in the alternative, this Court should require that the trial court make a case-by-case assessment as to whether due process and the interest of justice require an individual defendant's mental examination to be videotaped, and further whether or not the trial court erred in denying Ramsey the right to videotape Dr. Clayton's mental examination of Ramsey.

In *Smith*, Smith argued he had the right to have his attorney present during his mental examination. Smith relied on the dissenting opinion in *Simmons v. Thompson*, 900 S.W.2d 403, 404 (Tex. App.—Texarkana 1995, orig. proceeding), a case concerning a physical examination in breast implant litigation. This Court noted that the majority in *Simmons* held that "'the right to have one's attorney present at a physical examination ordered pursuant to Rule 167a is a matter to be determined within the discretion of the trial court on a case-by-case basis according to evidence showing a particularized need therefor.'" *Smith*, 422 S.W.3d at 805 (quoting *Simmons*, 900 S.W.2d at 404). In determining whether the Fourteenth Amendment required that counsel be present during a psychiatrist's post-petition examination, this Court in *Smith* looked to the factors as set out in *Mathews v. Eldridge*, wherein the court stated that determining what process is due in a particular proceeding requires consideration of three factors: (1) the private interest affected by the proceeding or official action; (2) the countervailing governmental interest supporting use of the challenged proceeding; and (3) the risk of an erroneous deprivation of that interest due to the procedure used. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In applying these factors, this Court concluded that (1) "[t]he psychiatric examination is not a deposition conducted for the purpose of discovering [the defendant]'s testimony; rather, the examination assists the expert in assessing . . .

whether the person has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence;" (2) counsel's presence during the interview might disrupt the examination and might disrupt and limit the effectiveness of the interview from a medical standpoint; and (3) "[t]he risk of an erroneous deprivation of a person's interest in a valid examination is lessened because the expert is subject to being deposed and any evidence that might lead to the suppression of the expert's opinion testimony could be discovered in that process and could form the basis for an objection to the expert's testimony at trial." *Smith*, 422 S.W.3d at 806-07. For the same reasoning outlined in *Smith*, we conclude that due process does not require Ramsey's mental evaluation to be videotaped.

In the present case, Ramsey is not arguing he is entitled to counsel at the mental examination, but he is arguing that he has a right for the mental examination to be videotaped as part of his right to cross-examine Dr. Clayton. Ramsey testified at his trial, and he exercised his right to cross-examine Dr. Clayton at trial. Ramsey also had the right to depose Dr. Clayton prior to trial. Ramsey could have pointed out or identified the alleged inconsistencies that he believed existed, and he could have cross-examined Dr. Clayton about the questions she asked during her interview or about her testimony regarding the mental evaluation. Ramsey also could have presented his own expert at trial to counter the conclusions of Dr. Clayton, but he did not do so.

13

Furthermore, Ramsey has not shown that the alleged error probably resulted in an improper verdict, or that it prevented him from presenting his issue on appeal. Tex. R. App. P. 44.1. Ramsey contends that he was actually harmed by the trial court's denial of his request for a videotaped mental examination because "Dr. Clayton's testimony regarding statements he made to her completely contradicted what previous evaluators had noted." However, the record of the trial indicates that Ramsey testified before the jury that his condition was similar to an addiction, that he had not completed a sex offender treatment program, and that when he committed one of his offenses it was, in his own words, like he was "a warring lion after a piece of meat, is like you got to have it. If I don't have it, I want - - I'm hungry, you know. . . . It's like an addiction, a drug addiction. . . .[i]f I didn't get it, I'd do anything to get it[.]" The evidence also demonstrated that about a year before trial, Ramsey admitted to a doctor that he is still sexually attracted to children and that he "probably will" reoffend. The jury heard Ramsey testify to his offenses and that he did not believe he could be around children. Dr. Clayton explained to the jury that Ramsey's records show that he acts on sexual urges and his attraction to prepubescent girls "despite having gotten in trouble for [those actions] in the past[,]" he has a history of alcohol abuse, he had a "traumatic, chaotic" childhood including many years of being a victim of sexual abuse by his uncle, he had multiple disciplinaries while incarcerated, and he lacked sex offender

14

training. The jury also heard Dr. Clayton's diagnoses for Ramsey and that, based on her training, her experience, the records she reviewed, and her interview with Ramsey, Dr. Clayton believes Ramsey suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Given the evidence presented at trial, we cannot say the trial court's ruling in denying Ramsey the right to videotape Dr. Clayton's interview of Ramsey probably caused the rendition of an improper verdict. *See* Tex. R. App. P. 44.1. Issue one is overruled.

SUFFICIENCY

In issues two and three, Ramsey contends the evidence is legally and factually insufficient to support the jury's verdict because the State failed to present evidence demonstrating that Ramsey has serious difficulty controlling his behavior. Ramsey argues that the State's expert, Dr. Clayton, concluded that because Ramsey was a repeat offender, had prior issues with alcohol, and has an alleged antisocial personality disorder, he must have serious difficulty in controlling his behavior. Ramsey maintains Dr. Clayton's testimony was "speculative, generic, and circular." Ramsey claims that Clayton's diagnosis of antisocial personality disorder is factually lacking and that most of her explanation of how Ramsey's pedophilia affected his ability to control himself rested on his own explanation of the sexual urges he felt in the past, not the present. According

15

to Ramsey, even if the State has shown Ramsey has difficulty in controlling his behavior, the State failed to prove that he has a serious difficulty controlling his behavior.

Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In an SVP case, the State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* at § 841.003(a) (West Supp. 2014). A "behavioral abnormality" is "a congenital or acquired

condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2014). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

The jury was entitled to draw reasonable inferences from basic facts to determine ultimate fact issues, and to resolve conflicts and contradictions in the evidence by believing all, part, or none of the witnesses' testimony. *In re Commitment of Barbee*, 192 S.W.3d 835, 842 (Tex. App.—Beaumont 2006, no pet.). "[P]roof of serious difficulty in controlling behavior" is required to civilly commit a defendant under the Act. *See Kansas v. Crane*, 534 U.S. 407, 413 (2002). Ramsey's current difficulty in controlling his behavior can be inferred from his past behavior, his own testimony, and the expert's testimony. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *13 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.).

Considering all the evidence in the light most favorable to the verdict, we conclude the jury could reasonably find beyond a reasonable doubt that Ramsey

17

has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Mullens*, 92 S.W.3d at 887. The record does not reflect a risk of injustice that compels granting a new trial. *See Day*, 342 S.W.3d at 213. We overrule issues two and three.

## THE EVIDENTIARY RULING

In his fourth issue, Ramsey argues that the trial court erred in overruling Ramsey's objections to the hearsay evidence relied upon by the expert witness in her testimony, and that the testimony was "unreliable and contained details that were substantially prejudicial to Appellant." Ramsey lodge a hearsay objection at trial to Dr. Clayton's testimony concerning the details of the offenses. The trial court overruled the objection but provided the jury with a limiting instruction. *See* Tex. R. Evid. 705(d).

We review a trial court's decision concerning the admissibility of evidence for an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts arbitrarily and unreasonably. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We will reverse a judgment if an error by the trial court probably

caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *See* Tex. R. App. P. 44.1(a).

Rule 705(a) of the Texas Rules of Evidence provides that an expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data on which the expert bases an opinion. Tex. R. Evid. 705(a); *Boswell v. Brazos Elec. Power Coop., Inc.*, 910 S.W.2d 593, 602 (Tex. App.—Fort Worth 1995, writ denied). Rule 705(d) provides:

> When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

Tex. R. Evid. 705(d); *see Day*, 342 S.W.3d at 198-99.

To preserve error concerning the admission of evidence, a party must timely object, stating the specific ground of objection, if the specific ground is not apparent from the context. Tex. R. Evid. 103(a)(1); *see also* Tex. R. App. P. 33.1(a). The trial court granted Ramsey a running objection as to hearsay. However, Ramsey did not object to Dr. Clayton's testimony on the basis that the graphic details of the offenses were prejudicial, and he has waived that objection. *See* Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a).

Dr. Clayton explained the facts she considered in forming her opinions, and how those facts affected her evaluation. The trial judge could reasonably conclude the evidence assisted the jury in weighing the testimony and considering the opinion each expert offered. The trial judge could also reasonably conclude the experts' testimony was not unfairly prejudicial. *See In re Commitment of Ford*, No. 09-11-00425-CV, 2012 Tex. App. LEXIS 2221, at **4-5 (Tex. App.—Beaumont Mar. 22, 2012, no pet.) (mem. op.); *Day*, 342 S.W.3d at 199. Nevertheless, as noted earlier, the trial court provided the jury with a limiting instruction. We presume the jury followed the trial court's limiting instruction. *Day*, 342 S.W.3d at 199. On this record, we cannot conclude that the trial court erred in overruling the objection, or that the trial court's limiting instruction was insufficient. Issue four is overruled.

## CROSS-EXAMINATION

In his fifth issue, Ramsey maintains that the trial court erred in not allowing Ramsey's counsel to question Dr. Clayton regarding one of the documents she relied upon in making her assessment. The admission or exclusion of evidence is reviewed under an abuse of discretion standard. *Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, L.L.C.*, 386 S.W.3d 256, 262 (Tex. 2012). We will not reverse a judgment on the admission or exclusion of evidence unless the appellant establishes that the trial court's ruling was in error and that the error was

reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See In re Commitment of McCarty*, No. 09-12-00083-CV, 2013 Tex. App. LEXIS 7855, at *5 (Tex. App.—Beaumont June 27, 2013, pet. denied) (mem. op.); *see also* Tex. R. App. P. 44.1(a)(1). "'[T]he exclusion or admission [of evidence] is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment.'" *In re Commitment of Hill*, No. 09-11-00593-CV, 2013 Tex. App. LEXIS 1881, at *18 (Tex. App.—Beaumont Feb. 28, 2013, pet. denied) (mem. op.) (quoting *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009)).

During defense counsel's cross-examination of Dr. Clayton, the following exchange occurred:

[Defense Counsel]: Were you in the courtroom earlier when Mr. Ramsey was asked if he was currently on parole?

[Dr. Clayton]: Yes.

[Defense Counsel]: In your review of the records, do you recall a case summary from the Board of Pardons and Paroles?

[Dr. Clayton]: Yes, I reviewed that.

[Defense Counsel]: Was that part of the information that you reviewed and relied upon?

[Dr. Clayton]: Yes.

21

[Defense Counsel]: Do you recall, at the end of that case summary, where Mr. Ramsey was evaluated as a low risk?

[Dr. Clayton]: I - - do you want to refer it to me, refer what page?

[Defense Counsel]: Your Honor, may I approach the witness?

THE COURT: Yes, you may.

[Defense Counsel]: This is SPU 19 (tendering). Do you recall that document?

[Dr. Clayton]: No, that's not mine. I - - I know, I'm looking at SPU 19 and it isn't that. Oh, here. Okay. Yes.

[Defense Counsel]: And to your knowledge, based on the testimony that was elicited earlier in the courtroom, Mr. Ramsey was granted parole by Texas Department of Criminal Justice. Correct?

[State's Counsel]: Objection to relevance, Your Honor.

THE COURT: Sustained.

[Defense Counsel]: He opened the door, Your Honor.

THE COURT: Who opened the door?

[Defense Counsel]: [State's counsel] did, when he asked if Mr. Ramsey was on parole.

THE COURT: But parole is not here, testifying. You didn't establish a foundation that she relied upon that in coming to her opinion, so it's not necessarily admissible at this point.

On appeal, Ramsey asserts that "the trial court's finding that [Ramsey]'s attorney had not established that Dr. Clayton relied on whether [Ramsey] had been granted parole or not in reaching her opinion about [Ramsey] completely

22

contradicts Dr. Clayton's unambiguous statement that she reviewed and relied upon the evaluation done by the Board, which inherently would have included its determination to grant him parole." He contends that the trial court "ruled that the foundation was not established to ask Dr. Clayton about the [Board of Pardons and Parole] assessment, which was incorrect."

From our reading of the record, Dr. Clayton testified that she had reviewed the case summary from the Board of Pardon and Paroles, which was part of the information that she reviewed and relied upon in forming her opinion. The State did not object to the defense's question to Dr. Clayton regarding whether at the end of the assessment the Board of Pardons and Parole determined Ramsey was a low risk. Defense counsel asked Dr. Clayton if she knew, based on the prior trial testimony, if Ramsey was granted parole by the Texas Department of Criminal Justice. After the trial court sustained the State's relevancy objection to that question, the trial court explained that the defense had not established a foundation that Dr. Clayton had relied "upon that," i.e., the fact that he had been granted parole, in forming her opinion. To the extent that Ramsey argues that this amounted to a finding that the defense had not established a foundation that Dr. Clayton had relied on the Board of Pardons and Parole's *assessment* in forming her opinion, we disagree. Nevertheless, even if the question and ruling of the trial court was as interpreted by Ramsey, Ramsey failed to offer and perfect a bill of

23

exception. Ramsey never made an offer of proof regarding the additional "cross-examination" or point that Ramsey intended to pursue. *See* Tex. R. Evid. 103(a)(2). Even if respondent's proposed questions were relevant to an issue in dispute, his failure to make an offer of proof under Rule 103(a) of the Texas Rules of Evidence preserved nothing for appellate review. *In re Dees*, No. 09-11-00036-CV, 2011 Tex. App. LEXIS 9807, at *14 (Tex. App.—Beaumont Dec. 15 2011, pet. denied) (mem. op.). Furthermore, assuming without deciding that the trial court erred in making the ruling in question, Ramsey has failed to establish that the alleged error by the trial court probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *See* Tex. R. App. P. 44.1(a). The fifth point of error is overruled.

Having overruled all of Ramsey's appellate issues, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on December 29, 2014
Opinion Delivered March 26, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.